### BOUDROT v. COCHRANE CHEMICAL CO.

(Circuit Court. D. Massachusetts. August 1, 1901.)

No. 1,092.

1. NEW TRIAL—CONFLICTING EVIDENCE.

The federal circuit court has the same power to grant a new trial in a case of conflicting evidence as under other circumstances.

2. DIRECTION OF VERDICT.

The federal circuit court has power to direct a verdict for the defendant, though there is evidence for the plaintiff which, but for conflicting proofs offered by defendant, would be sufficient to take the case to the jury.

**3. NEW TRIAL—GROUNDS.**

A laborer in the employ of a chemical company producing sulphuric acid, and working on the top of a fines burner, claimed to have been overcome by smoke and gas escaping from the lump burners, so that he caught his sleeve in certain moving mechanism, which broke his arm. He testified that he was alone and that he refused to continue his work until the defendant's foreman promised to inform him when ore was dumped into the lump burners, causing the escape of smoke and gas, but that the foreman subsequently left the locality, and the accident occurred during his absence. One of defendant's witnesses, who stood unchallenged, testified that he was working with plaintiff, relieving him, and had left the place of work briefly for water, when the injury occurred. Plaintiff made no attempt to reconcile witness' presence with the case made by him. *Held* sufficient to justify setting aside verdict for plaintiff.

At Law. On motion by defendant for a new trial.

Jesse C. Ivy and Edward E. Clark, for plaintiff.
Orville D. Baker, for defendant.

PUTNAM, Circuit Judge. The plaintiff was a common laborer, engaged in the employment of the defendant corporation, which was the producer, among other things, of sulphuric acid, for that purpose roasting pyrites in two classes of burners, one known as "lump burners" and the other as "fines burners." The lump burners were fed from time to time through doors opened for that purpose, and the plaintiff claimed that, when so fed, they emitted masses of smoke or gas, or both. So far as this is concerned, the plaintiff had sufficient evidence to go to the jury on his proposition that they emitted both, and also on the further proposition that the smoke and gas were in sufficient masses to rise through the building, including the place where the plaintiff was at work when injured.

The defendant's witnesses testified quite positively that the gases and smoke were practically innocuous; but they were all accustomed to working about the burners, so that the plaintiff had a clear right to go to the jury on the proposition that their testimony was to be taken qualifiedly, and as given relatively to the witnesses' special immunity from the effects of the gases and smoke, whatever they were. So far as this is concerned, there can be no question that the plaintiff was entitled to go to the jury on the proposition that the lump burners, when fed, gave out masses of gas and smoke, which would blind or choke, and even render unconscious, persons, like himself, not accustomed to them.

The plaintiff was set at labor doing some brickwork on the top of one of the fines burners. The previous day he had been doing the same kind of work on the top of another of the fines burners. He was not accustomed to this class of work, and, on account of moving mechanism on the top of the fines burners, which it was impossible for him to observe at all times, the work was especially dangerous for a green hand like himself. Moreover, he was justly entitled to go to the jury on the claim that at certain times the gas and smoke emitted from the lump burners, when fed, did rise over the fines burners, so as to be obnoxious, if not dangerous, to an unaccustomed person like himself. The testimony of the witnesses for defendant

shows also that, on account of the heat on the top of the fines burners, it was necessary that a person working there should be relieved at short intervals.

On this motion many incidental questions have been discussed by counsel, but as to none of them would the court be able to take the case from the jury, except as to the single point which we regard as raising the main issue of fact in the case. This observation is particularly applicable to the propositions urged on the court by the defendant with reference to the apparent discrepancies in the plaintiff's testimony, and to the matters of time, both absolute and relative, as stated by the plaintiff and by the persons in the defendant's employ who had charge of the lump burners. How necessary it is to leave, for the most part, such questions to the jury, is particularly illustrated in this case by the testimony of McGinley, who was plainly a reliable witness, but whose statements as to time agree neither with those of the plaintiff nor with any of the witnesses for the defendant, but which approach the former rather than the latter.

The suit is not based on a claim that the plaintiff was set at work at an improper place, and, perhaps, in view of his experience the previous day, it could not have been so claimed successfully. It rests on the proposition that the plaintiff refused to work the second day on the top of the fines burner until he had received the promise of the defendant's foreman that he would himself let the plaintiff know when the ore was dumped into the lump burners; that, relying on this promise, the plaintiff pursued the work; that the foreman, for a time, personally observed his promise, and attended himself in accordance therewith; that subsequently the foreman left the locality, unknown to the plaintiff; that during his absence from the locality the plaintiff's back was turned to the lump burners; that thereupon, and unknown to him, the gas and smoke escaped from the lump burners, and blinded him, or overcame him; and that, while thus blinded or overcome, his sleeve caught in the moving mechanism, and his arm was broken. So far as the motion for a new trial is concerned, the vital question is whether the foreman made the promise alleged by the plaintiff, as this is positively sworn to by the plaintiff. It is met by the testimony of the witnesses for defendant as positively and directly as any part of the case, and the parties may well be held to stand or fall with the determination of the issue on that particular fact.

Thus the case before us is strictly one of conflicting testimony, although we realize that the conflict may not be of that character which cannot be explained on any other theory than of willful falsification. If the testimony in behalf of either the plaintiff or the defendant stood alone, there could be no question that a jury might justly be expected to return a verdict based upon it. Therefore we deem it necessary, before proceeding further, to examine the rights and duties of the court—First, with reference to ordering a new trial in a case of conflicting testimony; and, second, with reference to its power to have directed a verdict for the defendant at the close of the proofs, as we were requested to do. The second proposition we deem it proper to touch on, because it is evident that, if we conclude to

grant a new trial, as now asked for, and the suit is tried anew, the question will then arise whether or not, if the evidence remains practically the same, it will be within the power of the court to direct a verdict.

The court has no doubt that it has the same power to grant a new trial in a case of conflicting testimony as under other circumstances. This proposition was directly in issue, and determined in favor of the power, by the circuit court of appeals for the Sixth circuit in Felton v. Spiro, 24 C. C. A. 321, 78 Fed. 576. That decision is an authority which, under the circumstances, we ought to follow, although, independently of it, we know of no limit to the power of the court to set aside verdicts which are clearly erroneous without regard to any other particularities whatever. As to the second question, we differ from the conclusion in Felton v. Spiro, as we understand it, that it is not in the power of the circuit court to direct a verdict for the defendant where there is evidence for the plaintiff, covering the whole case, which, except for the conflicting proofs offered by the defendant, would be sufficient to go to the jury. We think the circuit court of appeals for the Sixth circuit, on this question, overlooked the expressions of the supreme court to such an extent that we could not properly follow it. There are many observations in the authorities, and, indeed, some in the opinions rendered in behalf of the supreme court, which go to the extent of Felton v. Spiro; but the true rule we believe to be that represented by what was said by Mr. Justice Miller in behalf of the court in Pleasants v. Fant, 22 Wall. 116, 121, 122, 22 L. Ed. 780. "Must," says the learned judge, "the court go through the idle ceremony, in such a case, of submitting to the jury the testimony on which plaintiff relies, when it is clear to the judicial mind that, if the jury should find a verdict in favor of the plaintiff, that verdict would be set aside, and a new trial had?" This case is cited with approval in Coughran v. Bigelow, 164 U. S. 301, 307, 17 Sup. Ct. 117, 41 L. Ed. 442. Also the observations of Mr. Justice Brewer in his opinion rendered in behalf of the court in Patton v. Railway Co., 179 U. S. 658–660, 21 Sup. Ct. 275, 45 L. Ed. 361, and which is later than Felton v. Spiro, lead directly to the conclusion that a judge of the circuit court is authorized to direct a verdict in favor of one party "when, in his deliberate opinion, there is no excuse for a verdict save in favor of" that party; and this without any limitation whatsoever. To our mind, these expressions shadow out the power and duty of the circuit court, even where there is direct testimony on behalf of each party to the controversy, covering the entire case. In a conflict of proofs, with numerous witnesses, and with many facts in dispute, some of a complicated character, all of which appertain to the case at bar, the court, during the progress of the suit before the jury, may not be able to weigh the proofs correctly, and therefore, at least at the first trial, it may, as it did in the present instance, properly postpone its conclusion until after the verdict, when it can have a careful re-examination with the assistance of counsel; but for a court to continue in this line, refusing to direct verdicts, and, it may be, granting new trial after new trial, results in indefinitely postponing justice, and

sometimes in enormously enhancing the cost of litigation, without opportunity of relief, while to order a verdict submits the whole case at once to the appellate tribunal, with an opportunity for a seasonable and authoritative determination of the merits.

The plaintiff's appearance as a witness was, on the whole, excellent. The court instructed the jury with reference to the effect of the testimony of interested parties thoroughly, and apparently to the entire satisfaction of the defendant. The defendant was assisted by counsel of very large experience in the trial of jury causes. The case, on every hand, was developed with great care and thoroughness. There was nothing in the conduct of the jury, either in this cause or in subsequent causes in which its services were availed of by the court, which would raise any suspicion that it had any desire except to fulfill strictly the oath which it took. Nevertheless, there is one feature which the trial developed, bearing on the issue of the alleged promise by defendant's foreman, which the jury must have failed to properly appreciate, and which renders it clear that the verdict should not have been rendered. Among other witnesses called by the defendant was McGinley, already named, unchallenged so far as integrity was concerned. He testified that he was at work with the plaintiff on the top of the fines burner on the day the plaintiff was injured, engaged in the same work as the plaintiff, and relieving him. He also testified that he left the place of work briefly for a drink of water, and that during his absence the plaintiff was injured. His testimony is supported by the direct evidence or by the silence of several other witnesses who were in the immediate neighborhood of the fines burner, and who went at once to the aid of the plaintiff when he was injured; and no serious attempt was made to challenge it. There can be no moral doubt that McGinley was on top of the fines burner, at work with the plaintiff, prior to the injury, and that the injury occurred while McGinley was absent obtaining water, as already stated. This fact is incompatible with the case as made by the plaintiff at the trial. The court perceives that there is a possibility of shaping this fact so as to leave a theoretical reconcilement, but an attempt to do this would involve a substantially different claim from that on which the plaintiff went to the jury, and a substantially different rule of law, as the court fully explained in its charge in the presence of the parties. No attempt was made by the plaintiff to reconcile the fact of McGinley's presence with the case as made by him at the trial, and whatever theories the court might now suggest in that direction would not be justified, because the court cannot now properly place the case where the plaintiff did not assume to place it. Therefore, as the jury should have regarded the presence of McGinley as wholly and essentially incompatible with the testimony of the plaintiff, which he made the basis of his case, that he asked the foreman, "The man—where is the man I had the day before?" that he said, "I wants a man here;" that thereupon the foreman said, "You go ahead, and I will watch for the gas for you, and smoke,"—it follows that the jury failed to appreciate the force of this when it found that the foreman promised the plaintiff in the form testified to by the latter, as it must have done in order to have

rendered a verdict for the plaintiff, unless it misunderstood and disregarded the instructions of the court bearing on this particular topic.

While, as already said, various other matters in conflict between the plaintiff and the other witnesses are not of such character as would alone have justified the court in taking the case from the jury, yet these are sufficient to give color and support to the proposition on which we allow the motion for a new trial to turn, and leave us satisfied that justice will be promoted by sending the case to another jury, under circumstances where, perhaps, it can be better developed by the parties, as well as better understood.

Ordered, the verdict for the plaintiff is set aside, and a new trial is granted.