MORSE et al. v. ST. PAUL FIRE & MARINE INS. CO.

(Circuit Court, D. Maine. July 30, 1903.)

No. 131.

1. MARINE INSURANCE—SEAWORTHINESS—VERDICT—NEW TRIAL—WEIGHT OF EVIDENCE.

Where, in an action on a policy for the loss of a vessel, it was uncontradicted that the vessel was old and had never been repaired throughout, and after loss two witnesses who were uncontradicted testified that they made an examination by boring through her waterways, through the ends of the beams, and at some points into the timbers from the mainmast to the foremast, and that no sound wood was found, but only mud and dirty wood, a verdict finding that the vessel was seaworthy was set aside.

2. NEW TRIAL—VERDICT AGAINST EVIDENCE.

The rules which prevail in the federal courts with reference to setting aside verdicts of juries on the ground that they are against the evidence, or the weight of the evidence, commented on, explained, and applied.

A. Nathan Williams, for plaintiffs.

Charles E. & Arthur S. Littlefield, for defendant.

PUTNAM, Circuit Judge. This is the same suit in which an opinion was given orally on May 25, 1903. 122 Fed. 748. The case went to trial before a jury, and the plaintiffs recovered a verdict.

As stated in the previous opinion, the suit is on certain policies of marine insurance on a cargo not owned by the owners of the vessel which the cargo shipped, for a voyage from Calais, Me., to Philadelphia. The only defense submitted to the jury was that the vessel was unseaworthy at the time the risk was to commence, and the defendant now moves to have the verdict set aside on the ground that it was against the weight of evidence.

The evidence was, for the most part, conflicting; and many of the circumstances brought to the attention of the jury by one side and the other, and which could not be and were not disputed, led also to conflicting inferences. The defendant attacks the credit of the principal witness for the plaintiffs; but, although he was contradicted on some points by other witnesses, and failed to absolutely clear up certain other points, yet the circumstances are such, taken together, that we would not be justified in saying that the jury might not have given him full credit, so far as his integrity was concerned, and accepted his statements in the main. Indeed, this witness made on the court a favorable impression, rather than the reverse.

In this connection it will be well to sum up some expressions and rulings made by the presiding judge on previous motions of the same character as that now before us. In Daisley v. Dun (C. C.) 107 Fed. 218, we declined to set aside a verdict with reference to an award of damages; stating that, although we were of the impression that we would not have awarded so large an amount as was given by the jury, yet, after full consideration, we were conscious that our mind wavered. We concluded, therefore, that the court would not be justified in interfering with the verdict. In the same case, reported under the style of Daisley v. Douglass (C. C.) 119 Fed. 485, we entered an order diminishing the amount of the verdict; but this was under circumstances which enabled us to make what was substantially a mathematical computation showing that the damages allowed were necessarily excessive. In Boudrot v. Cochrane Chemical Co. (C. C.) 110 Fed. 919, we held that we might set aside a verdict even though the question was one of conflicting evidence, and we carefully reviewed the authorities in that regard. The verdict was set aside, but on the ground that the evidence of one witness in a certain particular, whose testimony as to that particular was not questioned by either party, necessarily contradicted the plaintiff's theory of his case as presented by his pleadings and supported by him on the stand. In Kelley v. Cunard S. S. Co. (C. C.) 120 Fed. 536, we declined to interfere with the verdict, observing "that the question which arises between the almost absolute improbability of the plaintiff's case from the defendant's point of view, and the somewhat like improbability of the defendant's case from the plaintiff's point of view, is one to be solved by a jury, and not by a judge presiding at a common-law trial, either before or after verdict." If, in the case at bar, we were compelled to pass between the proofs and the inferences on the one side and the other which contradict each other, we would be left as we were in Kelley v. Cunard S. S. Co.; but we think there is one particular in which the evidence for the defendant was uncontroverted, and which puts the case beyond doubt. This conclusion we reach notwithstanding, to our personal observation, the jurors who rendered this verdict were intelligent, attentive, and evidently anxious to reach a proper conclusion. They surely were not governed by prejudice, but we think in the particular referred to they must have failed to understand the proper application of the law to the evidence.

Each of the cases cited received a practical solution according to the peculiar circumstances, without developing any general statement to guide the court on motions of the kind at bar. In the federal courts, questions of setting aside verdicts are necessarily determined by a single judge, without any opportunity of appealing from his decisions. Therefore, unless the presiding judge is exceedingly careful in his determinations of motions of the kind at bar, he may almost indefinitely obstruct justice and prevent final disposition of a suit, because there is no relief against his rulings if they are erroneous. Therefore in the federal courts the reluctance to disturb verdicts is so great that it has sometimes led to the formulating of extreme rules. For example, on the question of negligence, it was said in Warner v. Baltimore & Ohio Railroad Co., 168 U. S. 339, 348, 18 Sup. Ct. 68, 42 L. Ed. 491,

497, that the question is not one of law for the court when "the record is not one where the facts inferable from the evidence were such that all reasonable men would of necessity draw the same conclusion from them." Perhaps so extreme a statement would not answer practical uses, but it illustrates the reluctance of which we speak. It is safe, however, to be guided by the expression repeated in Pythias Knights' Supreme Lodge v. Beck, 181 U. S. 49, 52, 21 Sup. Ct. 532, to the effect that cases are not lightly taken from the jury. No other proposition can be safely formulated into a general rule. Without undertaking to sum up the various phases of the case as presented pro and con by the proofs offered by the plaintiffs and by the defendant, it is enough to say that we could not disturb the verdict except for one fact, which we will explain. There is no question that the vessel was of considerable age—what might be called an old vessel; and the case fails to show that she had ever received any thorough general overhauling, or that she had such frequent renewals as may well maintain craft which have navigated the ocean for many years in a seaworthy condition. Apparently, she had been left in this respect to live her life. On the other hand, it was shown that she carried safely all her cargoes until that in question—sometimes ice and sometimes kiln-dried hard pine finished lumber. She must have been reasonably dry to have done this. Nevertheless, without occasional thorough overhauling, the time would certainly come when her ability to transport cargoes of any kind would cease, so that the presumption arising from such prior existing ability could not negative a case which in other respects may have furnished clear proofs against her.

In the present instance she made her run along the coast of Maine from Calais to Rockland, and after leaving Rockland she put into Port Clyde, in the town of St. George, also in Maine. These runs were short—such as might be made by a vessel of her class, under favorable circumstances, in the better portion of a single day, or certainly two days. The weather was stormy, but the evidence is clear that it was not of an extraordinary character for the season; that is, November, 1901, in which month the voyage was commenced. All the proofs of a positive character show that at Port Clyde she was in an unseaworthy condition, and leaking rapidly. Therefore the presumption arising from the manner in which she had previously transported her cargoes was met. Nevertheless neither of these facts, placing, as they do, one inference against another, would justify a court in setting aside a verdict of a jury based on them, whichever way it might have been rendered.

In the January and February previous to the beginning of the voyage to which this suit relates, she had received at New York considerable repairs, which had been rendered necessary by her going ashore on the Tuchernuck Shoals. So far as the exterior of the vessel was concerned, these repairs seem to have been very general. The boss calker who did that part of them testified for the plaintiffs; and, while the defendant criticises because they produced only him, and not the carpenter, yet, as he testified, and as is well known, a proper calking of the vessel required that her seams and wood ends should be examined, and the planking made sound, if not sound. The testimony

of the boss calker as to this was of such a character that the court would not·be justified in disturbing a verdict based on the statements made by him that the planking of the vessel was in good condition. If the record stopped there, the court would be powerless to act favorably on the defendant's motion. But it does not.

The result of the voyage out of which this suit arose was a stranding of the vessel on shoals in New York Bay, her subsequent raising, and a salvage sale of the cargo and hull. Pending this, or soon after, the defendant caused the vessel to be examined by two gentlemen whose depositions were read to the jury, and whose competency was not questioned. It is claimed that, as they were employed by the underwriters, their testimony should be weighed as that of interested and prejudiced witnesses. This may be conceded, so far as they undertook to give mere impressions of the appearance of what they found, or so far as they are contradicted by the proofs offered by the plaintiffs. Therefore, for present purposes, we reject all that portion of their testimony, and thus obviate the objection of the plaintiffs, so far as it maintains that their evidence was a matter of theory against fact, and that the court could not properly say the jury was wrong in accepting the latter. What we rest on is the evidence furnished by them of particular facts of a fundamental and serious character, which the plaintiffs made no attempt to contradict by proofs, the force of which, also, they have not undertaken to obviate at bar or in the brief which has been submitted to us. One of these witnesses testified as follows:

"We bored down through the waterways, striking into the ends of the lower deck beams, and, if I remember aright, into some of the timbers, too, and we couldn't find any sound wood at all—nothing but mud and rotten wood."

The other one testified as follows:

"And we bored down in the waterway till we struck the end of the beams, and we couldn't get any sound wood whatever. It was a kind of mud and dirty wood, that came right up into the barrel of the auger, and stayed there. They bored from the mainmast to the foremast."

We lay aside the characterization of what came up out of the borings, but we are compelled to accept the uncontradicted statements that the vessel was bored through her waterways, through the ends of the beams, and, at some points into the timbers, from the mainmast to the foremast, and that no sound wood was found. We also observe on the fact that the record is absolutely lacking in evidence of any other borings made either by the plaintiffs or the defendant, and we cannot reject the well-known consideration ·that this is the ordinary and most efficient way of determining whether or not a vessel is sound.

Notwithstanding the observations we made with reference to the jury, it will be borne in mind that this evidence, as the result of boring the vessel, stands uncontradicted and unexplained; and, whatever may be the condition of her planking, a vessel with a frame such as was exhibited by these borings cannot be regarded as seaworthy. Consequently either the jury failed to properly note this evidence, or to connect it with the definition of seaworthiness as given by us. Public

policy requires that courts shall not encourage the navigation of the ocean by craft in such a condition as this evidence shows this vessel to have been in. Therefore, on the strength of the testimony of these two witnesses, disclosing a fact which speaks for itself, and overlaps all the other facts in the record, and which stands absolutely uncontradicted, either directly, indirectly, or by inference, we are compelled to grant the defendant's motion. Of course, it is to be understood that our decision is based strictly on the case as it now stands, so that on a new trial the proofs which now control us may be directly met or avoided in such manner as to put this particular portion of it beyond the reach of the court on another motion for a new trial, if one is made, precisely as all the rest of it is beyond such control on the present record.

The verdict is set aside, and a new trial ordered.