MORSE et al. v. ST. PAUL FIRE & MARINE INS. CO.

(Circuit Court, D. Maine.    April 25, 1904.)

No. 27.

1. MARINE INSURANCE—UNSEAWORTHINESS—NEW TRIAL.
        Where, in an action on a marine policy, a new trial was granted after verdict in favor of plaintiff on the uncontradicted testimony of two witnesses who testified that after the loss they made an examination by boring through the vessel's waterways into the ends of the beams between

the main and fore masts, and found no solid wood, but only mud and dirty wood, and on the second trial such evidence was again introduced, and there was no other evidence offered tending to obviate its effect, a second verdict in favor of plaintiff should be set aside, and a new trial ordered.

A. Nathan Williams, for plaintiffs.

Charles E. Littlefield and Arthur S. Littlefield, for defendant.

HALE, District Judge. This suit has already been twice before the court. It first came before the court on a question raised at a trial before the jury. Judge Putnam rendered an oral decision, which appears in 122 Fed. 748. The case proceeded, and the plaintiffs recovered a verdict. The defendant moved to have that verdict set aside on the ground that it was against the weight of evidence. Judge Putnam, speaking for the Circuit Court, rendered his decision upon that question in 124 Fed. 451, granting a new trial. The case then went to trial a second time before a jury, and the plaintiffs again recovered a verdict. The defendant now moves to have this second verdict set aside, on the ground that it, also, was against the weight of evidence.

The suit is upon an open policy of marine insurance, upon a cargo, on a voyage from Calais, Me., to Philadelphia. The only defense submitted to the jury was that the vessel was unseaworthy at the time the risk was to commence. At the second trial of the case, more testimony was submitted; but the language of Judge Putnam, in relation to the issues before the jury, and as to the general character of the defense, is true, also, with reference to the case at its second trial. The court granted a new trial for reasons stated at page 454. After referring to the testimony of two men who examined the vessel, the court says:

"What we rest on is the evidence furnished by them of particular facts of a fundamental and serious character, which the plaintiffs made no attempt to contradict by proofs, the force of which, also, they have not undertaken to obviate at bar, or in the brief which has been submitted to us. One of these witnesses testified as follows: 'We bored down through the waterways, striking into the ends of the lower deck beams, and, if I remember aright, into some of the timbers, too; and we couldn't find any sound wood at all—nothing but mud and rotten wood.' The other one testified as follows: 'And we bored down in the waterway till we struck the end of the beams, and we couldn't get any sound wood whatever. It was a kind of mud and dirty wood, that came right up into the barrel of the auger, and stayed there. They bored from the mainmast to the foremast.' We lay aside the characterization of what came up out of the borings, but we are compelled to accept the uncontradicted statements that the vessel was bored through her waterways, through the ends of the beams, and at some points into the timbers from the mainmast to the foremast, and that no sound wood was found. We also observe on the fact that the record is absolutely lacking in evidence of any other borings made either by the plaintiffs or by the defendant, and we cannot reject the well-known consideration that this is the ordinary and most efficient way of determining whether or not a vessel is sound. Notwithstanding the observations we made with reference to the jury, it will be borne in mind that this evidence, as the result of boring the vessel, stands uncontradicted and unexplained; and, whatever may be the condition of her planking, a vessel with a frame such as was exhibited by these borings cannot be regarded as seaworthy. Consequently either the jury failed to properly note this evidence, or to connect it with the definition of 'seaworthiness' as given by us. Public policy

requires that courts shall not encourage the navigation of the ocean by craft in such a condition as this evidence shows this vessel to have been in. Therefore, on the strength of the testimony of these two witnesses, disclosing a fact which speaks for itself, and overlaps all the other facts in the record, and which stands absolutely uncontradicted, either directly, indirectly, or by inference, we are compelled to grant the defendant's motion. Of course, it is to be understood that our decision is based strictly on the case as it now stands, so that on a new trial the proofs which now control us may be directly met or avoided in such manner as to put this particular portion of it beyond the reach of the court on another motion for a new trial, if one is made, precisely as all the rest of it is beyond such control of the present record."

The testimony on which the new trial was granted by Judge Putnam was that of John W. Cann, a surveyor and inspector, and Alexander Fisher, a repairer and builder, of towboats, scows, and yachts. The testimony of these witnesses consisted of depositions, and was the same at the second trial as at the first. As will be seen from the quotation which we have made from the former decision of the court, it consisted of testimony of Cann and Fisher that they bored through the waterways into the ends of the lower deck beams, and into some of the timbers from the mainmast to the foremast, and that no sound wood was found. They also testified to further examinations at the "bottom part of the vessel"; but, confining ourselves only to the testimony commented upon by the court at the former trial, it is sufficient to say that no proofs were submitted at the second trial to contradict or explain that testimony, or in relation to the distinct subject-matter upon which the new trial was granted. Testimony was offered tending to show that the vessel had been new sealed and other repairs had been made below her under deck in 1897, and that there had been repairs from time to time upon her, and that she had been kept in repair. But all this testimony appears to relate to her condition before the examination made by Cann and Fisher; and no proofs are presented of any boring into her timbers below her lower deck or near the places testified to by these gentlemen; so that it still remains true that the testimony which is commented on by the court in the first application for a new trial is the only testimony relating distinctly and expressly to the condition of the vessel's lower beams and to the lower part of her frame. The decision of the court in the former trial is the decision of a judge not only of great learning in the law, but of great experience in all matters relating to vessels and maritime affairs. He found distinctly that "a vessel with a frame such as exhibited by these borings cannot be regarded as seaworthy." He laid great stress upon the condition of the lower part of the vessel, as shown by the testimony upon which he based his decision.

After a careful examination of all the testimony presented to the jury at the second trial, we are compelled to decide that the record does not show anything relating to the subject-matter on which the new trial was granted to materially change the facts which were before the court at the former hearing, and which led the court to grant a new trial. We must come to the same conclusion to which the court then came. Judge Putnam in his opinion gives a summary of the rulings of the court in this circuit with reference to new trials. From that summary, and from the current of decisions in the federal

courts, it is clear that a court, in order to set aside a verdict—especially a second verdict—should be without any doubt as to what it ought to do in the premises.

In Wright v. Southern Express Co., 80 Fed., at page 91, Judge Hammond, speaking for the Circuit Court, said:

"Notwithstanding there have been two verdicts in this case in favor of the plaintiff, the court is constrainedly of the opinion that the jury may be entirely wrong in its finding. * * * Unquestionably this case is not one for the direction of a verdict, but, on the contrary, is distinctly a case which ought to be submitted to a jury. But it does not follow, because it ought to be submitted to a jury, that the court should let the verdict stand, nor even two verdicts, possibly not three or more, if at each succeeding trial the proof should be precisely the same, and no stronger for the plaintiff at the last than the first trial."

In Felton v. Spiro, 78 Fed., at page 582, 24 C. C. A. 327, Judge Taft, speaking for the Circuit Court of Appeals, said:

"We come, then, to the question whether a federal court in which a jury has rendered a verdict has the power to set aside a verdict, when, in its opinion, it is contrary to the decided or overwhelming weight of the evidence, and, in the exercise of a legal discretion, may properly do so. Upon this point we have not the slightest doubt. In an elaborate and most carefully considered opinion, Judge Lurton, speaking for the court, points out the distinction between that insufficiency in law of evidence to support an issue which will justify a peremptory instruction by the court, and that insufficiency in fact of evidence, when weighed with opposing evidence, which, while not permitting a peremptory instruction, will justify a court in setting aside a verdict based on it, and sending the parties to another trial before another jury."

He then quotes the opinion of Judge Lurton found in Mt. Adams Co. v. Lowery, 74 Fed. 477, 20 C. C. A. 609:

"We do not think, therefore, that it is a proper test of whether the court should direct a verdict that the court, on weighing the evidence, would, upon motion, grant a new trial. A judge might, under some circumstances, grant one new trial and refuse a second, or grant a second and refuse a third. In passing on such motions, he is necessarily required to weigh the evidence, that he may determine whether the verdict was one which might reasonably have been reached. But in passing upon a motion to direct a verdict, his functions are altogether different. In the latter case we think he cannot properly undertake to weigh the evidence. His duty is to take that view of the evidence most favorable to the party against whom it is moved to direct a verdict, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the party having the onus."

In the case before us there was much more evidence submitted at the second trial than at the first. There was much testimony of examinations of the ship and of borings, but at different parts of the ship from that covered by the testimony of Cann and Fisher, upon which the new trial was ordered. The new testimony related to examinations and borings, but not to the condition of the ship below the lower deck, in her lower beams and lower framework. The proofs which seemed vital to Judge Putnam have not been met by any testimony offered at the second trial.

The verdict is set aside. A new trial is ordered.