## COUGHRAN *v.* BIGELOW

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 53. Argued and submitted May 7, 1896. — Decided November 30, 1896.

The granting, by a trial court, of a nonsuit for want of sufficient evidence to warrant a verdict for the plaintiff is no infringement of the constitutional right of trial by jury.

A surety on a bond, conditioned for the faithful performance by the principal obligor of his agreement to convey land to the obligee on a day named on receiving the agreed price, is released from his liability if the vendee fails to perform the precedent act of payment at the time provided in the contract, and if the vendor, having then a right to rescind and declare a forfeiture in consequence, waives that right.

EUGENE W. Coughran and Nathan H. Cottrell filed their amended complaint in the district court of the first judicial district of the Territory of Utah on December 15, 1891,

against Henry C. Bigelow and H. P. Henderson, showing that on April 26, 1890, E. A. Reed and H. H. Henderson, as principals, and the defendants as sureties, executed and delivered to the plaintiffs a bond conditioned for the performance of a contract on the part of the said principals to convey to the plaintiffs an interest in certain lands situate in Weber County, in the said Territory; alleging that the said principals had failed to perform the contract, and seeking, on account of such alleged breach of the condition of the bond, to recover the amount of the penalty thereof from the defendants.

The bond was as follows:

"Know all men by these presents that we, E. A. Reed and H. H. Henderson, principals, and H. Bigelow and H. P. Henderson, as sureties, all of the county of Weber, Territory of Utah, are held and firmly bound unto Eugene W. Coughran and Nathan H. Cottrell, of Sioux Falls, South Dakota, in the sum of five thousand dollars, lawful money of the United States, to be paid to the said Eugene W. Coughran and Nathan H. Cottrell, their executors, administrators or assigns, for which payment, well and truly to be made, we bind ourselves, we and each of ourselves, executors and administrators jointly and severally firmly by these presents.

"Sealed with our seals, and dated this 26th day of April, A.D. 1890.

"The condition of the above obligation is such that the above-bounden E. A. Reed and H. H. Henderson, on or before the first day of October next, or in case of their death before that time, if the heirs of the said E. A. Reed and H. H. Henderson, within three months after their decease, shall and do upon the reasonable request of the said Eugene W. Coughran and Nathan H. Cottrell, their heirs or assigns, make, execute and deliver, or cause so to be made, a good and sufficient warranty deed, in fee simple, free from all incumbrance and with the usual covenants of warranty, of the following-described premises, to wit: An undivided one tenth of section fifteen (15), in township six (6), north of range one (1) west, Salt Lake meridian, Weber County, Utah Territory, except a part of the

southwest quarter section of said section 15, described as follows : Beginning at the southeast corner of said southwest quarter section, and running thence west 20 rods; thence north 30 rods; thence west 20 rods; thence north 40 rods; thence east 40 rods; thence south 70 rods to the place of beginning; provided the said Eugene W. Coughran and Nathan H. Cottrell comply with their part of the contract this day made and delivered to them by the said E. A. Reed and H. H. Henderson, and a copy of which is hereto attached, then the above obligation to be void; else to remain in full force and virtue.

" H. H. HENDERSON.
" E. A. REED.
" H. C. BIGELOW.
" H. P. HENDERSON.

" Signed in presence of —
   " GEO. H. BURGITT."

Attached to the bond was the instrument following:

" OGDEN, *April 26,* 1890.

" Received of Eugene W. Coughran and Nathan H. Cottrell thirty-three hundred and thirty-three dollars as part purchase price of an undivided one tenth part of the following-described lands, viz.: Section fifteen (15), in township six (6), north of range one (1) west, Salt Lake meridian, Weber County, Utah Territory, except a part of the southwest quarter section of said said section fifteen, described as follows: Beginning at the southeast corner of said southwest quarter section, and running thence west twenty rods, thence north thirty rods, thence west twenty rods, thence north forty rods, thence east forty rods, thence south seventy rods, to the place of beginning.

" The full purchase price being ten thousand dollars, to be paid as follows: $3334 on October 1, 1890, and $3333 on April 1, 1891, with interest at eight per cent per annum on deferred payment from October 1, 1890. But in case said land is sold before October 1, 1890, then the last two payments are to bear interest from April 1, 1890, to the date of sale. And in case any payments are not made as above

provided the amount paid herein is forfeited, and this receipt
is from that time void and inoperative, and when the pay-
ment [*sic*] are made as above provided the land to be con-
veyed to said Eugene W. Coughran and Nathan H. Cottrell,
or their assigns, with good title free from incumbrances.

> "H. H. Henderson.
> "E. A. Reed.
> "Millie G. Reed.

"Signed in presence of —
        "Geo. H. Burgitt."

The plaintiffs alleged that they made the first and second
payments provided for in the contract in accordance with
the terms thereof; that on or about November 1, 1890, upon
the request of the plaintiffs, E. A. Reed and H. H. Hender-
son tendered them a deed for the said interest in the lands;
that thereupon they examined the title to the property, found
the same to be defective and, because of the defects therein,
refused to accept the deed; and that as to these transactions
between the parties to the contract the defendants had due
notice. It was alleged that Reed and H. H. Henderson had
never been able, and were not able at the time the complaint
was filed to convey a fee simple and unincumbered title to
the one tenth interest in the lands described in the bond and
contract; that for a long time prior to April 12, 1890, the
property was owned in fee simple by the Union Pacific
Railway Company, which company, by deed of that date,
conveyed all of the east half and the north half of the north-
west quarter of said section fifteen to one James Taylor; that
in and by that deed the company reserved to itself "the ex-
clusive right to prospect for coal and other minerals within
and underlying said land, and mine and remove the same if
found," and also "the right of way over and across said lands,
and space necessary for the conduct of said business thereon,
without charge or liability therefor"; that the title of Reed
and H. H. Henderson to the said interest was obtained by
deed to them from Taylor, dated October 17, 1890, which
deed was made subject to the said mining rights reserved to

the company; that the lands were situated in a mining district, and that the said reservation rendered the title to the lands doubtful and unmarketable, and greatly diminished their probable value; that, furthermore, the property was subject to a mortgage. The plaintiffs allege that they had performed all the conditions of the contract upon their part, except to pay the sum of $3333 on April 1, 1891, and that neither Reed and H. H. Henderson, nor the defendants, had ever tendered to them any other or different title than the alleged defective one aforesaid, or had ever refunded to them the amount of the first two payments. They asked for judgment in the sum of $5000.

The defendants, on January 8, 1892, filed separate answers, wherein they denied that the said second payment made by the plaintiffs was made in accordance with the provisions of the contract, or that the title to the property was defective, or that the refusal of the plaintiffs to accept the deed tendered to them by Reed and H. H. Henderson was on account of any defect in the title, or that the lands were mineral lands, or that a reservation of mineral rights therein would be an incumbrance upon the title thereto. Further answering, they alleged that shortly before the execution of the said bond the plaintiffs had entered into negotiations with Reed and H. H. Henderson for the purchase of the said interest in the lands; that at that time Reed and H. H. Henderson held the said interest under executory contracts for the conveyance thereof to them; that Reed and H. H. Henderson fully informed the plaintiffs of the character of their title; that the said contract was then entered into, and the plaintiffs, in receiving the same, required some guarantee that Reed and H. H. Henderson would perfect their rights under the said executory contracts by April 1, 1891, that being the agreed time, as alleged, at which the plaintiffs would be entitled to a conveyance from Reed and H. H. Henderson; that thereupon it was agreed and understood that the defendants, as sureties, would execute a bond in the sum of $5000, with Reed and H. H. Henderson as principals, guaranteeing that on or before April 1, 1891, Reed and H. H. Henderson should execute and deliver a deed

as stipulated in the contract, provided that the plaintiffs should perform all the conditions of the contract upon their part; that the bond was prepared and attached to the contract, and was signed by. Reed and H. H. Henderson and by the defendants; that by inadvertence in the preparation of the bond the time therein stated for the delivery of the deed was October 1, 1890, instead of April 1, 1891; that, therefore, the bond was not in accordance with the agreement and understanding of the parties thereto. .

The case came on for trial in the said court November 29, 1892, before the court and a jury. Thereupon the plaintiffs introduced evidence tending to show, among other things, that the said lands were, on November 1, 1890, subject to a mortgage for the sum of $9000, recorded July 2, 1889; that on October 17, 1890, the defendants placed in the custody of the Ogden State Bank a deed bearing that date, whereby Reed and H. H. Henderson conveyed to the plaintiffs the said interest in the said lands, subject to one tenth of the said mortgage; two notes, unsigned, dated October 17, 1890, payable to Reed and H. H. Henderson on April 1, 1890, for the aggregate amount of $2433, being the amount of the last payment under the said contract, less $900, or one tenth of the amount of the said mortgage; and an unexecuted mortgage of the interest in the lands described in the contract, in favor of Reed and H. H. Henderson; that the bank was instructed to deliver the deed to the plaintiffs when they should have executed the notes and the last-mentioned mortgage, and should have returned them to the bank to be delivered by it to Reed and H. H. Henderson; that subsequently to October 8, 1890, and not later than the 12th of that month the bank received the sum of $3334 from the plaintiffs, with instructions to pay the same to Reed and H. H. Henderson, and did pay the same to them some time within the month following. It was further shown that Reed and H. H. Henderson derived their title to the property from James Taylor, by deed dated October 17, 1890; that Taylor's title was obtained from the said railway company; and that the deed from the company to Taylor as well as the deed of Taylor to Reed and H. H. Henderson contained the reservation of mineral rights as set out in the complaint.

After all the evidence on behalf of the plaintiffs had been introduced, the defendants moved for a nonsuit. The motion was granted, and judgment was entered in favor of the defendants. The plaintiffs then appealed to the Supreme Court of the Territory of Utah, where the judgment of the said District Court was affirmed. *Coughran* v. *Bigelow*, 9 Utah, 260. Thereupon they sued out a writ of error from this court.

*Mr. C. W. Bennett* for plaintiffs in error submitted on his brief.

*Mr. Arthur Brown* for defendants in error.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The ruling of the Supreme Court of the Territory of Utah in affirming the action of the trial court ordering a nonsuit of plaintiffs is assigned as error. It was held by this court in *Elmore* v. *Grymes*, (1 Pet. 469,) that a Circuit Court of the United States had no authority to order a peremptory nonsuit against the will of the plaintiff. This case has been followed in repeated decisions. *Crane* v. *Morris*, 6 Pet. 598; *Castle* v. *Bullard*, 23 How. 172.

The foundation for those rulings was not in the constitutional right of a trial by jury, for it has long been the doctrine of this court that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed, and that, if the evidence be not sufficient to warrant a recovery, it is the duty of the court to instruct the jury accordingly, and, if the jury disregard such instruction, to set aside the verdict. *Parks* v. *Ross*, 11 How. 362; *Schuchardt* v. *Allens*, 1 Wall. 359; *Pleasants* v. *Fant*, 22 Wall. 116, 120. And, in the case of *Oscanyon* v. *Arms Co.*, 103 U. S. 264, it was said by Mr. Justice Field, in delivering the opinion of the court, that

the difference between a motion to order a nonsuit of the plaintiff and a motion to direct a verdict for the defendant is " rather a matter of form than of substance."

That the cases above cited, which held that the Circuit Court of the United States had no authority to order peremptory nonsuits, were based, not upon a constitutional right of a plaintiff to have the verdict of a jury, even if his evidence was insufficient to sustain his case, but upon the absence of authority, whether statutory or by a rule promulgated by this court, is shown by the recent case of *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24, 38, where it was held that, since the act of Congress of June 1, 1872, c. 255, § 5, 17 Stat. 197, reënacted in § 914 of the Revised Statutes, courts of the United States are required to conform, as near as may be, in questions of "practice, pleadings and forms and modes of proceeding" to those existing in the courts of the State within which the trial is had, and a judgment of the Circuit Court of the United States for the Eastern District of Pennsylvania, ordering a peremptory nonsuit, in pursuance of a state statute, was upheld. It is the clear implication of this case that granting a nonsuit for want of sufficient evidence is not an infringement of the constitutional right of trial by jury.

As there was a statute of the Territory of Utah authorizing courts to enter judgments of peremptory nonsuit, there was no error in the trial court in granting the motion for a nonsuit in the present case, nor in the judgment of the Supreme Court affirming such ruling; if, indeed, upon the entire evidence adduced by the plaintiffs enough did not appear to sustain a verdict.

We are thus brought to the question whether the trial court was mistaken in its view of the plaintiffs' evidence.

The facts of the case are somewhat peculiar. The suit is against sureties on a bond, conditioned for the performance by the principals of the terms of a contract for the sale of land to the parties plaintiff. The chief difficulty arises from the fact that there is a discrepancy between the terms of the contract, as they appear in the written instrument itself, and as they are described or narrated in the bond.

The contract is clear and unambiguous. It is dated April 26, 1890. After acknowledging receipt of thirty-three hundred and thirty-three dollars as part purchase price of an undivided one tenth part of a certain tract of land, describing it, it proceeds as follows: " The full purchase price being ten thousand dollars, to be paid as follows, $3334 on October 1, 1890, and $3333 on April 1, 1891, with interest at eight per cent per annum on deferred payment from October 1, 1890. But in case said land is sold before October 1, 1890, then the last two payments are to bear interest from April 1, 1890, to the date of sale. And in case any payments are not made as above provided, the amount paid herein is forfeited, and this receipt is from that time void and inoperative, and when the payments are made as above provided the land to be conveyed to said Eugene W. Coughran and Nathan H. Cottrell, or their assigns, with good title free from incumbrances."

The obvious meaning of these provisions is that if the sum of $3334 is paid on October 1, 1890, and the sum of $3333 is paid on April 1, 1891, with interest from October 1, 1890, then it shall be the duty of the vendors to convey the property to the vendees or their assigns with a good title free from incumbrances; but that if said deferred payments are not made, as provided for, then the amount previously paid shall be forfeited and the contract become void.

The bond, bearing even date with the contract, contains the following language: " The condition of the above obligation is such that the above bounden E. A. Reed and H. H. Henderson, on or before the first day of October next, or in the case of their death before that time, if the heirs of the said E. A. Reed and H. H. Henderson, within three months after their decease, shall and do upon the reasonable request of the said Eugene W. Coughran and Nathan H. Cottrell, their heirs or assigns, make, execute and deliver, or cause so to be made, a good and sufficient warranty deed, in fee simple, free from all incumbrance, and with the usual covenants of warranty, of the following-described premises, . . . provided the said Eugene W. Coughran and Nathan H. Cottrell comply with their part of the contract this day made and delivered to them

by the said E. A. Reed and H. H. Henderson, and a copy of which is hereto attached, then the above obligation to be void; else to remain in full force and virtue."

It will be observed that, by the terms of the contract, the deed of conveyance was not to be made until the purchase money had been paid in full, but the recital in the bond calls for the making and delivery of the deed on or before the first day of October, 1890.

The solution of the difficulty thus created will be found by reading the bond in the light of the contract, to secure the performance of which was the purpose of the bond. That contract provided, indeed, that the vendors should execute and deliver a proper deed, but also provided that the title should not pass until the deferred payments were made. To construe the bond as compelling a conveyance before such payments were made would deprive the vendors of the security given them by retaining the title and also of their stipulated right to forfeit the cash payment and rescind the sale, if the payments were not made as provided in the contract.

The obligatory portion of the bond was expressly made dependent on the proviso that Coughran and Cottrell should comply with their portion of the contract that day made and a copy of which was attached, one of the terms of which was that the sum of $3334 should be paid on October 1, 1890. This payment was not so made on that day. The acceptance by the vendors of the payment subsequently made, on or about October 12, was, of course, a waiver by them of their right to rescind and declare a forfeiture, but such waiver did not bind the sureties, who were relieved from liability by the failure of the vendees to perform the precedent act of payment at the time provided in the contract. *Bank of Columbia* v. *Hagner*, 1 Pet. 455; *Kelsey* v. *Crowther*, 162 U. S. 404.

The contention on the part of the plaintiffs in error that the alleged inability of the vendors to make a conveyance of the character called for by the contract relieved them from the duty of payment, is only true so far as they might choose to make such inability the ground of a right to rescind. They could not elect to abide by and enforce the contract, except

upon performance or tender of payment on their part. *Telf-ner* v. *Russ*, 162 U. S. 171; *Kelsey* v. *Crowther*, 162 U. S. 404. These were the views that prevailed in the Supreme Court of the Territory, and its judgment is accordingly

*Affirmed.*