Edwin Albert Merritt and Ogden H. Tappan, Respondents, v. Herbert P. Bissell, Appellant.

1. Principal and Agent — Ratification.   A ratification of the unauthorized act of an agent, or of a stranger who claims to act as such, if it exists, must be found in the intention of the principal, either express or implied.

2. Ratification.   While it is the duty of a principal to disavow the unauthorized act of his agent within a reasonable time after it comes to his knowledge, or otherwise, in some cases, he makes the act his own, still, where one who has assumed to act as an agent for another has no authority to do so but is a mere volunteer, a failure to disavow his acts will not amount to a ratification, unless under such circumstances as indicate an intention to do so.

3. Non-ratification by Owner of Building of Unauthorized Contract Made by Architect.   The architect of a building in course of construction, assuming to act as agent of the owner, made an unauthorized contract with one M., in the owner's name, for stone for the building. The owner had a contract with one S. for all work and material for the stone masonry work.   Stone was delivered by M., but as soon as the owner learned that the contract therefor had been made in his name, he informed M. that such contract was unauthorized, that he had a contract with S., and proposed to do nothing which would change his relations in regard to it, and refused to pay M. anything until a certificate was obtained from the architect which would authorize him to charge S. the amount paid.   M. obtained from the architect a certificate to the effect that he recommended the owner to draw an order in favor of M. for a certain amount (being a portion only of the amount called for by the contract made by the architect) on account of material furnished and charge the same to the account of masonry work.   M. delivered such certificate to the owner, who thereupon paid him the amount named therein and took a receipt therefor.   Held, that this payment did not constitute a ratification by the owner of the unauthorized contract made by the architect.

Merritt v. Bissell, 84 Hun, 194, reversed.

(Argued March 7, 1898; decided April 19, 1898.)

Appeal from a judgment of the late General Term of the Supreme Court in the third judicial department, entered March 1, 1895, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The action was to recover for a quantity of red sandstone alleged to have been sold and delivered by the plaintiffs to the

defendant. It was alleged in the complaint that the contract, upon which this action was based, was made on behalf of the defendant by Charles D. Swan. The answer denied the allegations of the complaint, and specially alleged that Swan was not the defendant's agent and had no authority, express or implied, to make the contract for him or in his name.

At the conclusion of the trial the referee found that on the eighteenth of May, 1892, Swan, representing himself to be the agent of the defendant, made a contract with the plaintiffs to furnish stone to be used in the erection of a house for the defendant, and agreed to pay therefor the sum of $1,385. The referee also found that Swan had no authority to make the contract. The stone was delivered, but the first knowledge which the defendant had that the contract for it was made in his name was on or about the twenty-ninth of August, when he immediately informed the plaintiffs by letter that he had a contract with William Schumacher for all the work and material for the stone masonry work upon his house, and that he understood from his architect that he had ordered the stone in his name but the bills were to be paid by the contractor.

The referee likewise found that, in October, the plaintiff Merritt had an interview with the defendant in relation to his claim, when the defendant stated to him that he did not owe the Potsdam people anything; that he had a contract with Schumacher to provide all the stone masonry on his house; that he would not make any payment to the plaintiffs unless authorized to do so by Schumacher, and that the contract provided that Swan should issue a certificate in his favor, but if Merritt would go to Swan and get a certificate which would enable him to charge it to Schumacher he was willing to pay it to help him out; that thereupon the plaintiffs obtained from Swan a certificate to the effect that he recommended the defendant to draw an order in favor of the plaintiffs for five hundred dollars on account of material furnished and charge the same to the account of masonry work, and that the plaintiff delivered the certificate to the defendant, who thereupon paid him five hundred dollars and took a receipt therefor.

As a conclusion of law, based upon the foregoing facts, the referee held that the payment of five hundred dollars by the defendant to the plaintiffs was a ratification of the unauthorized contract made by Swan.

On the 27th of July, 1892, the plaintiffs wrote the defendant a letter which, so far as material, was as follows : " We inclose herewith original stone bills and duplicate receipts for cars, for two cars of cut stone shipped you on June 29, 1892. We send Mr. Rafalsky, our agent in this matter, by mail to-day, copies of the same bills, and our bill for the order, for $1,385.00, as per our contract letter of May 21, 1892. We also send copies of said bills to Mr. C. D. Swan, your architect. Mr. Rafalsky will call upon you at an early date and present our bill." This letter did not reach the defendant until about the twenty-ninth day of August, when he wrote : " I have a contract with a Mr. William Schumacher for all the work and material for the stone mason's work on my house, and I understand from my architect that he had ordered the Potsdam, stone in my name, but the bills would all be paid by the contractor I have already made one payment on account to the contractor, and will now refer your bills to the architect and Mr. Schumacher." On the fifth of September the plaintiffs replied to the letter last mentioned : " In reply to your esteemed favor of 29th ult., we would state that we understand from Mr. Swan, your architect, that a certificate has been given to the mason for the cut stone work, and that you will give the mason therefor a check payable to our order, and that he will remit the same to us. If we understand the matter correctly, we shall hope shortly to receive the remittance."

On the first of October the plaintiffs again wrote the defendant : " Since your favor of 29th August, Mr. William Schumacher, the contractor for the masonry for your new residence, has not been heard from by us. Mr. Swan wrote us soon after his return from New York that he would give Mr. Schumacher an estimate, which would enable him to remit, and we hope that you will kindly give this matter such

personal attention as will cause Mr. Schumacher to send us, say $1,000.00 on account. It would accommodate us if we could receive check as early as the 15th inst." On the fourth of the same month the defendant replied : " I beg to acknowledge receipt this morning of your letter of October 1st, relating to the amount due you from Mr. William Schumacher for stone furnished for my new residence. I have made all payments strictly in accordance with my contract with Mr. Schumacher and will immediately refer your letter to Mr. Swan, with the request that he induce Mr. Schumacher to make payment to you as requested." On the following day the plaintiffs wrote : " We have your favor of yesterday and note contents. We hope to receive remittance from Mr. Schumacher during the next day or two."

*George C. Riley* for appellant.

*John G. McIntyre* for respondents. Swan, defendant's architect, had authority to substitute Potsdam red sandstone for blue limestone, and to make the contract with plaintiffs in defendant's name to get it. (1 Wait's Act. & Def. 221, § 2.) The acts of the defendant caused a ratification of the contract. (1 Wait's Act. & Def. 231, 232, §§ 11, 13.) *Ingalls* v. *Morgan*, 10 N. Y. 178 ; *Adams* v. *Mills*, 60 N. Y. 539 ; *Myers* v. *M. L. Ins. Co.*, 99 N. Y. 1 ; *Bank of U. S.* v. *Davis*, 2 Hill, 451 ; *Higgins* v. *Armstrong*, 9 Col. 38 ; *Hyatt* v. *Clark*, 118 N. Y. 563 ; *Dispatch Line* v. *Bellany*, 12 N. H. 205 ; *Rogers* v. *Kneeland*, 10 Wend. 218 ; *Peterson* v. *Mayor, etc.*, 17 N. Y. 449 ; *Watson* v. *Gray*, 4 Abb. Ct. App. Dec. 540 ; *Hoyt* v. *Thompson's Exr.*, 19 N. Y. 207.) After notice to produce letters and papers sent to Swan, defendant's architect, parol evidence was properly given of their contents. (2 Greenl. Ev. 683, § 560 ; 2 Phillips on Ev. 521.) It was competent to prove the contract made by Swan and afterwards the defendant's acts ratifying the same. (*H. M. & M. Co.* v. *Donat*, 10 Col. 529 ; 2 Rice on Ev. 670 ; *Hoyt* v. *Thompson's Exr.*, 19 N. Y. 207 ; 1 Am. & Eng. Ency. of Law, 429.)

MARTIN, J.   The only question involved in this appeal is whether the evidence and findings of the referee, so far as sustained by it, were sufficient to justify his second conclusion of law.   He held that the payment of five hundred dollars by the defendant to the plaintiffs on October 19, 1892, constituted a ratification of the unauthorized contract made by Swan.   It is to be remembered that the defendant had previously assured the plaintiffs in plain and unmistakable terms that the contract made by Swan was wholly unauthorized. Moreover, when the five hundred dollar payment was made, he refused to make any payment whatever until a certificate was obtained which would authorize him to charge to the contractor the amount paid, having expressly stated to the plaintiffs that his contract was with Mr. Schumacher, and he proposed to do nothing which would change his relations in regard to it.

A reading of the evidence contained in the record demonstrates that, from the commencement to the end of the transaction, the defendant persistently insisted that he was in no way liable upon the contract made by Swan, and that he would in no way recognize his agency in making it and would do nothing except perform his contract with his contractor. He did, however, evince a disposition to aid the plaintiffs in any way possible without ratifying the act of Swan in making the contract with them, or without in any way interfering with his contract with Schumacher.   Not only is this clearly indicated by the evidence, but the proof also shows that the plaintiffs well knew and well understood that Swan was not the agent of the defendant, that the defendant was not responsible for his act, and that he refused in any way to change his relation with the plaintiffs or with his contractor.   That the defendant never intended by act, word or deed to ratify the act of Swan in making the contract with the plaintiffs is manifest, and there is no evidence to sustain a contrary conclusion. A ratification of the unauthorized act of an agent or of a stranger who claims to act as such, if it exists, must be found in the intention of the principal, either express or implied.

If that intention cannot be shown, no ratification can be held to have been established. While it is the duty of a principal to disavow the unauthorized act of his agent within a reasonable time after it comes to his knowledge, or otherwise, in some cases, he makes the act his own, still, where one who has assumed to act as an agent for another has no authority to do so, but is a mere volunteer, a failure to disavow his acts will not amount to a ratification, unless under such circumstances as indicate an intention to do so. When the transaction under consideration is tested by the ordinary rules governing the law of agency, it becomes obvious that there was no evidence in this case which justified the referee in holding that the defendant by the payment of five hundred dollars, or in any other manner, ratified the act of Swan.

We think the referee's second conclusion of law cannot be sustained as there was no evidence to justify it ; that the judgment of the General Term and that entered on the report of the referee should be reversed, and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed, etc.