### FADLEY v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Third Circuit. April 30, 1907.)

#### No. 11.

1. WRIT OF ERROR—REVIEWABLE ORDER—JUDGMENT OF NONSUIT.

A judgment of compulsory nonsuit, entered by a federal court in Pennsylvania in conformity to the state practice, is a final judgment, and reviewable on writ of error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 471.

Conformity of practice in common-law actions to that of state court, see note to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

2. CARRIERS—INJURY TO PASSENGER—GETTING OFF TRAIN—CONTRIBUTORY NEGLIGENCE.

Plaintiff's husband was struck and killed by a passing train at a station on defendant's railroad. In an action to recover damages for the death, the only testimony was that introduced by plaintiff, which was uncontradicted, and showed that the road was a double-track road, trains running west on the north track and east on the other, there being a space of 12 feet between the two; that there were platforms for passengers on

the north side of the north track and on the south side of the south track, but no platform between; that decedent alighted from a west-bound train on the south side of the same in the daytime, and started across the south track, when he was struck by an east-bound train thereon. The only witness to the accident was another passenger, an employé of defendant, who alighted on the same side in advance of decedent and crossed the south track ahead of the train. He testified that such train was in plain view and whistled, and also that he called and motioned to decedent to stay back, but that decedent started to run, and had reached the south rail when he was struck. There was no evidence of any invitation by defendant to passengers to alight on that side of trains, or that it had knowledge of any custom to do so; nor did decedent, who was a stranger to the place, have knowledge of any such custom, if it existed. *Held*, that the court properly directed a compulsory nonsuit on the ground of contributory negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1385–1397.]

3. WITNESSES—CROSS-EXAMINATION—SCOPE.

Where a witness of an accident by which a person was run over and killed by a railroad train, on his direct examination by the plaintiff in an action to recover damages for the death, testified generally to the situation and conditions surrounding the accident, and to certain acts of the decedent, the defendant was entitled on cross-examination to inquire in detail as to all the acts and conduct of decedent immediately preceding the accident.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 931–948.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Charles Koonce, Jr., for plaintiff in error.

John S. Wendt, for defendant in error.

Before GRAY, Circuit Judge, and LANNING, District Judge.

GRAY, Circuit Judge. The writ of error in this case is to the judgment of the Circuit Court for the Western District of Pennsylvania, in a suit brought under the provisions of the statute of that state, by the plaintiff in error, as widow of Robert Fadley, deceased, and a citizen of said state, against the Baltimore & Ohio Railroad Company, a citizen of the state of Maryland. The plaintiff sues in behalf of herself and her children, to recover damages from the said defendant for negligently causing the death of the said Robert Fadley.

The statement of claim charges that, on the 13th day of August, 1905, the decedent was a passenger on one of the defendant's trains, hereinafter referred to as train No. 201, and that, just after alighting therefrom at a station known as Gratztown, in the state of Pennsylvania, and while crossing a parallel track of the defendant's road, owing to the negligence of the said defendant, he was killed by a train, hereinafter referred to as train No. 6, running thereon in an opposite direction.

At the said station at Gratztown, the defendant's road, which is a double track road, runs in an easterly and westerly direction. The northerly track is used by the west-bound trains and the southerly track by east-bound trains. Trains running on these tracks thus pass, as is usual, to the right of each other. On the morning of the accident,

the train No. 201, in which the decedent was a passenger, was proceeding westwardly, and therefore on the northern track. The decedent occupied a seat on the left hand side of the smoking car, next to the baggage car, which intervened between the smoking car and the locomotive. Two seats behind him sat Blackburn, a telegraph operator of the defendant company, who was called as a witness in the case. As the train was approaching Gratztown, decedent was notified of that fact by the conductor, as he held a ticket for that station. As the train slowed up at or near the station, Blackburn went out upon the forward platform of the smoking car and, standing upon the lower step upon the left hand side thereof and looking westwardly, stepped from the car while it was still in motion. At the same time, he heard the whistle of the approaching express train No. 6 on the southern track. He then started across the space between the two tracks in a somewhat diagonal direction, towards the platform on the southerly side of the east-bound track. He then became aware that the decedent was about to alight from the same side of the forward platform of the smoking car, and says he shouted to him to look out for No. 6, and that he threw up his hands as he did so. The decedent, however, alighted before the train had quite stopped, and Blackburn again shouted to him to stay back. He says:

"I hollered to him to stay back; it wasn't far from him and I knew I could only get across myself, and I knew if he did come across he wouldn't make it across, and I hollered for him to stay back, and I hollered again after I was on the platform; I hollered to him twice at least."

The witness explained that, as he first got off and before the train stopped, in order to go to the telegraph office at the westward end of the east-bound or southern platform, he went in a direction westwardly and diagonally across the intervening space and tracks; that as the train had moved further on before decedent alighted, and as decedent started diagonally in a southeasterly direction, their paths crossed each other, and on this account the witness, Blackburn, says he was close to the decedent when he shouted to him. Decedent, however, according to the witness, as soon as he alighted, started to run across the intervening space towards and across the east-bound track, and had almost cleared the southerly rail when he was struck by train No. 6, running at a high rate of speed, and instantly killed. Blackburn says that when he, Blackburn, started to go across, No. 6 was in full view, about the distance of two telegraph poles away.

Blackburn, the sole witness of the accident, was called by the plaintiff, and the facts which we have summarized were established by his testimony. Other undisputed facts are that, the distance between the west-bound and east-bound tracks was twelve feet; that there was a platform on the northerly side of the west-bound track, 150 feet long, and opposite to it on the south side of the east-bound track was another platform, both for the use of passengers. It was about the same length, but extended about 20 feet further west than the west-bound platform. These platforms were on the outside of both main tracks and were so placed that passengers on the west-bound trains would alight on the north side of the tracks, and those on the east-bound trains

would alight on the platform on the south side of the tracks. These platforms were about eight feet wide. From about the middle of the west-bound platform, there was a planked cross-way to the east-bound or southerly platform, which witness says was used for trucks, in wheeling baggage from one side to the other. It also appeared that the car in which decedent was a passenger was alongside of the northerly platform at the time the decedent alighted, and that this platform was in full view of any one upon the forward platform of the car; that no other passengers than the decedent and the witness, Blackburn, alighted on the south or left hand side of the train. Along the southerly platform, there was a freight house and an old box car, used as a telegraph office, and on the northerly side, on ground some eight feet above the platform and somewhat to the east, was a station house and ticket office. It also appears, from the testimony of Blackburn, that when decedent alighted, he alighted with his face partly turned toward the east and away from the oncoming train, and ran in a southeasterly direction and not towards the buildings on the south side of the platform. Three or four witnesses were introduced by the plaintiff, who testified that they had occasionally seen passengers on the west-bound trains alight from the south side of the train. There was no evidence, however, of invitation, express or implied, on the part of the road or its officers to passengers, that they should do so, nor was there any evidence of knowledge on the part of the road or its officers of such a custom, if custom it was, or that it so frequently happened that its officers and agents should have been aware thereof. It was also in evidence that the decedent was a stranger and not familiar with the situation at Gratztown or its surroundings. He, therefore, could not have any knowledge as to passengers more or less frequently alighting upon the south side.

There was no conflicting testimony as to any material fact, all the testimony being that of witnesses produced by the plaintiff. At the conclusion of this testimony, upon motion of the defendant, a compulsory non-suit was granted by the court, presumably upon the ground urged by the defendant, that the evidence adduced by plaintiff showed that the decedent was guilty of negligence which contributed to the accident resulting in his death. Afterwards, a motion was made by plaintiff to take off the compulsory non-suit, and the same, coming on for hearing, was argued by counsel and overruled by the court.

There are several assignments of error, the most important of which concern the action of the court in sustaining the motion of the defendant to grant a compulsory non-suit and in overruling plaintiff's motion to take off the same.

The question, whether a judgment of compulsory non-suit is such a final judgment as may be reviewed on a writ of error, has been settled in the affirmative by the Supreme Court of the United States, in Central Trans. Co. v. Pullman Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55. The question was presented in a case from the United States Circuit Court for the Eastern District of Pennsylvania, and it was held that the Circuit Court should follow the state practice in ordering or refusing to order non-suits, and it was declared that:

"The judgment of non-suit being a final judgment, disposing of the particular case and rendered upon the ruling in matter of law duly excepted to by the plaintiff, is subject to be reviewed in this court by writ of error."

The same rule was followed in Coughran v. Bigelow, 164 U. S. 301, 17 Sup. Ct. 117, 41 L. Ed. 442.

A motion for compulsory non-suit always challenges the most careful examination and scrutiny by the court of the evidence adduced by the plaintiff, and the testimony and all inferences therefrom must be taken most strongly in favor of the plaintiff. With this caution in mind, we are of opinion that the court below did not err in granting the compulsory non-suit. The defendant company had provided the usual platforms on the north and south sides of the west-bound and east-bound tracks respectively. We must assume, for there is no evidence to the contrary, that they were properly constructed and adequate for the accommodation of passengers alighting from the trains stopping alongside of them. Their position was such on the outer and right hand side of the respective tracks, that passengers alighting upon them were in no danger from passing trains. They were on the sides upon which such platforms are customarily placed on double track roads, and obviously convenient and safe for passengers using them. Their position was an invitation, as well as a notice, to passengers to use them and alight on the right hand side of the train. There was nothing on the left hand side to indicate that passengers were to alight on that side, much less anything that could be construed as an implied invitation to so do. The decedent was a man of mature years, and there is nothing to show that he was not capable of intelligently observing his surroundings at the time in question. It was broad daylight when he alighted, and there was a clear view of the east-bound track for at least nearly half a mile in the direction from which No. 6 train was coming. Moreover, by the testimony in chief of plaintiff's own witness, the whistle of that train was sounded more than once before he started across the east-bound track. By the testimony of the same witness, he was warned of the approach of the train more than once, by the waving of the witness's hands and his shouting to look out for the train. Notwithstanding this, decedent started and ran diagonally across the intervening twelve-foot space and the east-bound tracks, upon the southern rail of which he was struck by the oncoming train. His course, as pointed out in the testimony, was such that it must have crossed that of the witness, Blackburn, and thus have brought the two so close together as to have made it improbable that the warning should not have been seen or heard. In the space of twelve feet between the two tracks, decedent could have safely and conveniently stood, while No. 6 passed by.

From these facts established by the undisputed testimony on the part of the plaintiff, no other inference seems reasonable than that decedent, with full knowledge of the approaching train, thought he had time, by running, to clear the east-bound track in front of train No. 6. With full knowledge of the situation, or opportunity thereof, of which he should have availed himself, he thus left a place of safety, where he had alighted, and attempted to pass in front of the swift-

ly moving east-bound train. In this, we see no ground upon which reasonable men could differ, as to the character of defendant's conduct. If this be so, the suggested negligence on the part of the company, in allowing a train at high speed to pass a station while another train is discharging its passengers, cannot affect the conclusion arrived at. No matter how negligent the defendant may have been, the negligence of the plaintiff was a contributing cause, without which the accident could not have happened.

The other assignments of error relate to the testimony elicited on cross-examination from plaintiff's witness, Blackburn. We have carefully considered those parts of the cross-examination duly objected to by plaintiff's counsel, and the exceptions taken to the action of the court in overruling the same. We do not find, however, that this testimony was permitted in contravention of the well-settled rules governing cross-examination. The witness, Blackburn, was called by the plaintiff at the opening of her case, and was the principal witness in her behalf. He testified to being a passenger on train No. 201; to the decedent sitting in front of him; what side of the car they sat upon; as to what the conductor said to decedent; as to how and when the witness alighted from the train; how and when and under what circumstances the decedent followed him and also alighted; as to how fast the train was moving; whether it had stopped when witness and decedent left it; as to the situation and dimensions of the platforms, the station buildings on either side of the road and the general physical environment of the place of the accident; as to the approach of train No. 6: as to its schedule time and as to its being late; also as to the schedule time of train No. 201 and as to its being late; as to what warning was given by No. 6 as it approached the station; and as to when he heard the whistle, whether before or after he alighted. It seems to us very clear that this testimony in chief opened up a very wide range for cross-examination. The further testimony of the witness was in continuation and elaboration of that already given. Having testified to part of the conduct of the decedent, in alighting from the train, defendant's counsel was properly allowed to explore the witness's knowledge as to all that decedent did immediately following his actions already testified to. Having testified to his having gotten out upon the wrong side of the train, and that another train was approaching upon the opposite track, of which warning was given by a whistle, it was certainly relevant to that testimony to inquire what was done by the decedent at that crisis. Everything, therefore, done by the decedent, after alighting from the train, seems to us to have been pertinent to the examination in chief.

The assignments of error in this regard are without merit, and for the reasons already given the judgment of the court below is affirmed.