## BURDEN et al. v. ROBERTSON.

## SAME v. THOMPSON.

(Circuit Court of Appeals, Second Circuit. March 16, 1925.)

Nos. 213, 214.

1. **Attorney and client ⬤➡166(2) — Attorneys suing for services, relying on promise of stockholders to their agent who employed plaintiffs, held to have burden to prove promise.**

In action by attorney to recover for services to agent of corporate stockholders, plaintiff had burden of proving defendant's authorization or promise to pay for such services.

2. **Principal and agent ⬤➡99 — "Acts within scope of agent's authority" are those usual or proper for accomplishment of end in view.**

Term "scope of authority," as applied to agent, is not term of legal art, and "acts within scope of agent's authority" mean those proper for accomplishment of end in view, or such as are usual in matters of that kind.

3. **Principal and agent ⬤➡124(2) — Evidence held insufficient to make authority of stockholder's agent to employ attorneys question for jury.**

In attorneys' action for services, testimony by agent of certain defendants, shareholders in corporation, as to his statements in meeting concerning employment of counsel, to which no objection was made, held insufficient evidence to make his authority to employ counsel a jury question.

4. **Principal and agent ⬤➡166(1)—One may assume contract which he did not originally make, or accept result of act originally unauthorized.**

One may assume contract which he did not originally make, or accept result of act originally unauthorized, and, if he does this with intent to ratify and with full knowledge of all material circumstances, it is sufficient ratification.

5. **Principal and agent ⬤➡169(3)—Conduct of corporation stockholders on report by agent held not ratification of employment of attorneys.**

Where corporation stockholders, on report of agent who had been dispatched on business, either stood mute, or said in substance that it was no concern of theirs, there was neither assumption nor ratification of unauthorized employment of attorneys.

6. **Principal and agent ⬤➡175(2)—Corporation stockholders adopting acts of agent in employing attorneys held liable for services of attorneys.**

Where minority corporation stockholders adopted and approved agent's employment of attorneys; they were liable in action by attorneys to recover for services, regardless of whether original authority of agent included power to employ attorneys.

In Error to the District Court of the United States for the Southern District of New York.

Actions by Thomas W. Robertson and Frank A. Thompson against I. Townsend Burden and others, tried together. Judgments for plaintiffs, and certain defendants bring error. Reversed in part, and affirmed in part.

These actions were tried together, each being an endeavor to recover the reasonable value of professional services rendered by the plaintiffs, Messrs. Robertson and Thompson, as they severally allege to the defendants "and each of them, at their joint and several instance and request" in and about the matters hereinafter stated.

Each action was brought, not only against these plaintiffs in error, Burden, Putnam, Tobin, Jester, and the Navarro Securities Company, but against numerous other defendants who were either never served with process or as to whom the complaint was dismissed, or against whom verdict was given and judgments entered from which no writs have been prosecuted.

Each of the defendants was in May, 1920, a stockholder in the Keen & Wolff Oil Company, a corporation engaged in the discovery and production of petroleum in the neighborhood of Shreveport, La. The control of that company by a majority holding of the common stock was in its apparent founders, Keen & Wolff. The common stock alone had voting power, and of the plaintiffs in error Burden and Putnam at least were holders of common stock to a very small extent, though considerable owners of the preferred. Evidently a good deal, but still a minority, of the voting stock of this concern had been sold in the northeastern portion of the United States through a few brokers. The holders of this stock had been accorded minority representation in the directorate of Keen & Wolff Company.

In April, 1920, an annual meeting of the company's shareholders, at which directors would be elected, was approaching, when word reached New York that the majority holding of the stock had been sold, either directly to a rival oil company, or to persons primarily interested in such rival.

The question immediately arose as to whether this change in control would make a difference in the minority representation theretofore accorded, and plaintiff in error Jester, through whom the minority stock had been sold (according to his own testimony), called a meeting at his office on May 10th to see what could or should be done about it.

One Marvin was introduced to the meeting as a "gentleman in the office" of one Hull,

who was a defendant below in both of these actions, against whom judgments were entered, and who took no writ. Messrs. Burden and Putnam attended this meeting; we are satisfied that Tobin did not; Jester had called the meeting, and for the purposes of this case Navarro Securities Company was Jester. The result of this meeting was that Marvin was to go to Shreveport, armed with such proxies as could be obtained from the shareholders present at the meeting and others within reach, attend the meeting of Keen & Wolff Company, and endeavor to get on the directorate to be elected minority representation and also (by Marvin's testimony) to arrange, "if agreeable to these minority stockholders, an exchange of the common stock which they held" for stock in the rival company, on the same basis which it had been alleged the majority shareholders had made their exchange.

This was the whole object of Marvin's trip, as testified to by himself, and he spoke at some length (also according to his own testimony) as to his experience in corporation matters, and then, as put by Marvin on the witness stand, "I made the statement that in the event that it was necessary in my judgment to employ counsel to assist me to obtain what I had gone after that I should be permitted to do so; there was no objection to that," and Messrs. Jester and Hull made some suggestions as to how counsel could be obtained or what counsel should be employed.

Marvin went to Shreveport, and before the date of annual meeting employed Mr. Robertson. The next day Marvin, who had some proxies in blank, gave one to Mr. Robertson and one to his stenographer, and the three went to the stockholders' meeting.

This appearance of a considerable minority representation seems to have alarmed the secretary of the corporation, who was apparently prepared to hold a meeting with the majority proxies in his possession and put through a "slate" which gave to the minority represented by Marvin no representation whatever. Thereupon for reasons quite undiscoverable from this record the secretary retired from the meeting, leaving Marvin, Robertson and the stenographer in full control and they thereupon elected a full board of their own choice, all of which Marvin communicated by telegraph to Jester and Hull, and Robertson almost immediately began some legal proceedings in the courts of Louisiana, the exact nature of which is similarly undiscoverable from the bill of exceptions. Thompson practiced law in St.

Louis, and he went to Shreveport at Marvin's request to assist or possibly direct Mr. Robertson.

The legal proceedings in Shreveport arrived at no result; they were terminated by a settlement, after another broker, who had been instrumental in selling especially the preferred stock of Keen & Wolff Company, went to Shreveport and made the necessary arrangements. Whether the suit brought by Marvin through Mr. Robertson had anything to do with the settlement is not clear and is immaterial.

Marvin returned to New York and made a written report of his proceedings in the South. To receive this report another meeting was called at which Tobin was present; Burden and Putnam were not. Marvin then went to Burden's office. As to what happened there, there is a contradiction in the evidence, except that there is no testimony showing or tending to show that either Burden or Putnam approved or assumed any liability for what Marvin had done. Tobin, according to his own evidence, described Marvin's operation as one in which "he had made a perfect ass of himself." There is no contradiction of this characterization of Marvin's efforts by Tobin.

Jester and Hull, however, on receiving Marvin's telegraphic report, rather enthusiastically agreed with all that he had done. Upon this evidence the court below ruled that there could be no recovery against any of the parties defendant who did not attend the meeting at Jester's office on May 10th, unless Marvin's act in employing counsel had been ratified by the defendants or some of them, and as to the parties defendant and served with process who did not attend the May 10th meeting nor subsequently approve of what Marvin had done, the complaint was dismissed. As to all these plaintiffs in error and some others the matter went to the jury who assessed the value of Mr. Robertson's services at $6,450 and that of Mr. Thompson at $8,500. To judgments accordingly these five defendants sued out writs.

Chase Mellen, of New York City, for plaintiffs in error Burden and Putnam.

Jay & Candler, of New York City (Robert W. Candler, of New York City, of counsel), for plaintiff in error Tobin.

Greene & Hurd, of New York City (Daniel S. Murphy and Emerson F. Davis, both of New York City, of counsel), for plaintiffs in error Jester and Navarro Securities Co.

Satterlee & Canfield, of New York City

(S. H. Hammond and R. Randolph Hicks, both of New York City, of counsel), for defendants in error Robertson and Thompson.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The problem at bar is one of sufficiency of proof. The plaintiffs have satisfied a jury that they did about $15,000 worth of work for somebody at the instance and request of Marvin; of course each of them declared upon the "joint and several instance and request" of these plaintiffs in error and others. But the record yields not a scintilla of evidence that either of the plaintiffs knew any one else concerned with their employment other than Marvin and possibly, in the case of Mr. Thompson, Hull.

So far as the parties appealing are concerned, any liability arising out of Marvin's original employment of these plaintiffs depends wholly on the extent of Marvin's authority in the premises.

[1] The actions are upon a promise and the burden of proof is on plaintiffs to prove the promise; and, when it comes to employing counsel, the whole case depends upon Marvin's testimony as to what he said at the meeting of May 10th, viz. if he thought it necessary to employ counsel "to obtain what I had gone after, that I should be permitted to do so; there was no objection to that." This is the whole case for the promise, and, assuming now that it stands uncontradicted, was it enough to authorize the employment of two attorneys to bring a litigation of such expensive dimensions as is shown by this record?

[2] If Marvin's act in employing the plaintiffs was not within the scope of his authority, no one but Marvin was pecuniarily responsible for the employment. This oft-used phrase, "scope of authority," is not a term of legal art. The vital word of the phrase is scope, and that must be taken in its often varying sense. See a discussion of this subject in Fitzgerald v. Fitzgerald, 44 Neb. 463, 62 N. W. 899. By way of description, rather than definition, it may be said that acts within the scope of one's authority means those proper for the accomplishment of the end in view, or such "as are usual in matters of this kind." First Nat. Bank v. Nelson, 38 Ga. 391, 95 Am. Dec. 400. The sum of the matter is that each investigation of authority is a tub that must stand on its own bottom. Previous decisions are more or less illuminating guides; they are rarely precedents of law.

[3] Applying these considerations to the evidence herein, we find Marvin embarking upon litigation and employing counsel to bring it without asserting or pretending to have any evidence of authority to act for others except the holding of proxies to vote at a shareholders' meeting. The investigation is not widened by inquiring what was the apparent scope of Marvin's authority, for the only thing that was apparent about him in Shreveport, beyond his physical presence, was the possession of these proxies; and it has not even been suggested that such possession gave him any authority whatever to employ counsel for the proxy giver.

We think the fairest way of putting it is to inquire whether, if these plaintiffs, both lawyers of experience, had been told by Marvin exactly what he testified to below, they would have been justified in asserting, after Marvin had employed them, that every shareholder at the meeting of May 10th within the sound of Marvin's voice had jointly and severally requested the services of Messrs. Robertson and Thompson to do what they proceeded to do.

In our opinion the question answers itself. No reasonable man could have entertained such a belief. Marvin did not even testify that he was given authority. He only said that he ought to be permitted to employ counsel; and to infer an authorization to do what he did, from his further testimony that no one objected to what he thought he should be permitted to do, is beyond the bounds of law, and consequently beyond even the large powers of inference residing in a jury. The result is that, so far as any authority growing out of action or inaction at the meeting of May 10th is concerned, there was no case to go to the jury as to Burden and Putnam. The evidence is insufficient. And as to these defendants below the plaintiffs should have been nonsuited. Coughran v. Bigelow, 164 U. S. 301, 17 S. Ct. 117, 41 L. Ed. 442.

As to Tobin, there was not enough evidence to go to the jury that he was present at the meeting of May 10th, and he was entitled to the same disposal of the case as was accorded to several other defendants who did not attend that fateful meeting.

[4, 5] No one doubts that one may assume a contract which he did not originally make, or accept the result of an act originally unauthorized; and, if he does this "with an intent to ratify, and with full knowledge of all the material circumstances, [it] is a ratification." Ansonia v. Cooper,

64 Conn. 536, at 544, 30 A. 760, 762; cf. Merritt v. Bissell, 155 N. Y. 396, 50 N. E. 280. There is no evidence that Tobin either assumed or ratified Marvin's undertakings with these plaintiffs, while, so far as Burden and Putnam are concerned, they at most listened to Marvin's story on his return from Shreveport, and either stood mute or said in substance it was no concern of theirs. This constituted neither assumption nor ratification; they were under no obligation to say anything. Marvin had shot his bolt, and they did not choose to adopt Tobin's style of comment. They assumed no legal obligation by their moderation.

[6] With respect to Jester and Navarro Company, we are of opinion that they did adopt and make their own the acts of Marvin in employing these plaintiffs.

It is therefore ordered that in respect of Messrs. Burden, Putnam, and Tobin the judgment under review be reversed, with costs, and that as to Jester and Navarro Securities Company it be affirmed, also with costs.