## MacLACHLAN v. PERRY (two cases).
### Nos. 5908, 5909.

Court of Appeals of the District of Columbia.

Argued Dec. 5, 1933.

Decided Jan. 2, 1934.

Mark P. Friedlander and Samuel H. Boyd, both of Washington, D. C., for appellant.

Alvin L. Newmyer and David G. Bress, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

Appeals from judgments for the defendant upon directed verdicts in correlated damage cases.

The record presents two separate cases which were consolidated for trial and submitted together. The first is the case of Margaret MacLachlan, appellant, who as plaintiff below claimed damages against the appellee, Samuel Perry, for injuries suffered by her, as alleged, by reason of his negligence. The second is the case of Archibald MacLachlan, appellant, the husband of the preceding appellant who claimed damages against Perry, because of loss occasioned to him by the injuries inflicted upon his wife in the same accident.

In the first case Mrs. MacLachlan, as plaintiff, alleged that the defendant was the owner of a certain apartment house known as Kearney Apartments, which contained a certain stairway as the means of ingress and egress between the first floor of the building and the lobby and vestibule thereof; that the stairway was maintained and controlled by the defendant for the use of his tenants and other persons lawfully upon the premises; that on March 5, 1928, the plaintiff, after visiting her sister who was a tenant of the defendant in the apartment house, used the stairway on leaving the building; that the defendant carelessly and negligently maintained the stairway, and the steps thereof were permitted to be and were in an unsafe and defective condition, in that they were composed of a material or substance which emitted or sweated moisture frequently during the afternoons, and became covered with a slimy, slippery, and wet substance, which became more slippery by union with particles of soap and oil left on the steps after being cleaned by the janitor of the premises; that the janitor had cleaned, oiled, and soaped the steps of the stairway on the morning of the day in question, and as the plaintiff was on the steps descending from the apartment of her sister she was caused by such slippery condition of the steps to slip and fall from the top of the stairway to the stone landing floor in the vestibule of the premises, whereby she suffered severe and painful physical injuries which resulted in permanent disabilities; that the defendant knew of the condition of the steps occasioned by such sweating, and knew or should have known that such condition was accentuated by the moisture joining with the oil and soap on the steps, and had been advised on numerous occasions that the sweating of the steps was a frequent afternoon occurrence and made it unsafe for persons to use them for ingress and egress; that plaintiff had no knowledge of these conditions until after the accident which resulted in her injuries.

The defendant for a plea admitted the ownership and maintenance of the apartment house by him, but in effect denied all charges of negligence made against him in the declaration.

At the trial of the case the plaintiff was the first witness to testify in her own behalf. She stated that she had visited her sister at her apartment on the 5th of March, 1928, and that at approximately 5:30 in the evening she left her sister's apartment and went down the stairway of the apartment house; that as she came down the flight of stairs her foot slipped on the top step and she fell about five steps, breaking her ankle and suffering other severe injuries; that after her fall she called for her sister, and with the aid of help she was cared for. Upon cross-examination plaintiff testified that she could not definitely say what it was she slipped on; that she did not see any oil nor anything else on the steps; that she had visited her sister four or five times, and on those occasions nothing happened; that when she came down the steps on this occasion she saw a banister along the left side of the steps going down, but she did not put her hand on it; that she was carrying a pocketbook and a pint bottle of tonic medicine in her left hand, which bottle, when she fell, broke and its contents spilled in the lower hallway, and some of the contents may have splashed onto the steps; that her sister did not accompany her down the stairs, but went to the head of the stairs with her and then returned to her apartment after they had bidden each other good-bye.

Whereupon Anne Davis, plaintiff's sister, was called as a witness for the plaintiff, and testified that plaintiff had visited her on the 5th of March, 1928, and that about 5:30 p. m. had left her apartment; that witness ac-

companied her sister to the head of the stairs and then returned to her own apartment; that after her sister fell she came to her assistance and helped carry the plaintiff to her apartment; that she then went to call the doctor and in doing so saw water on the top flight of the stairs, but did not see any water on the flight of stairs on which plaintiff fell; that she never saw any water to her recollection upon the stairs where her sister fell, but she did not examine the steps at the time of the accident.

Whereupon a Mr. Thacker was called as a witness for the plaintiff and testified that he was the real estate agent who operated the apartments involved in this suit for the owner, Samuel Perry; that he was so operating the apartment on March 5, 1928; that the heat was on in the apartments on that day; that there had been no change in the structure of the building from that date until the present time; that he employed one Charles Randall on April 28, 1927, as janitor and that his services terminated on the 15th day of March, 1928; that he re-employed him about eight months prior to the trial, and that he was still employed there.

Whereupon Charles E. Dillon was called as a witness for the plaintiff and testified that he was an architect and builder and had for many years handled building work involving stone and marble, and was familiar with the quality of various marbles and their reactions to various conditions; that he had examined the stairways at the Kearney Apartments about three weeks previously and found that the stairway between the lobby and the first-floor landing was made of Tennessee marble, which has a certain amount of absorbent quality, and that, if the stairway were washed with soap and water, the marble steps would absorb some of these substances, and in case of a change in temperature, such as might be caused by the opening of the front door in the vestibule, the marble would cause a slimy substance to form on the face of the treads; that such a condition could result from a change in temperature, if there were any, and from constant wear on the stairs. He further testified that there was an unusually large radiator in the apartment building about seven or eight feet from the head of the flight of steps on the top of which Mrs. MacLachlan fell, and that with that radiator on, and a quick change of temperature in the vestibule below caused by the opening of the front door, a slimy substance would appear upon the treads of the steps where Mrs. MacLachlan fell; that

the front door is only about ten feet from this stairway; that the building faces northeast, and there is no building across the street from there, but only a vacant lot.

Whereupon Charles Randall was called as a witness on behalf of plaintiff and testified that he was the janitor of the apartment house on March 5, 1928, and for some time prior thereto; that the heat was on at that time; that he swept and washed the steps with soap and water about 5:30 a. m. on that day, and at 5:30 on the afternoon he had occasion to examine the steps, and there was no water on them, since he had dried them thoroughly when he washed them in the morning.

Thereupon counsel for the plaintiff pleaded surprise at the testimony given by this witness, and asked leave to present an affidavit theretofore signed by the witness which was contradictory of his present testimony, and to cross-examine the witness upon it. Leave was granted by the court, whereupon a written affidavit purporting to be signed by Randall was produced, wherein it was stated that the steps of the apartment house would sweat practically every day; that after they had been washed early in the morning the steps would commence about noon and from then on to develop on the tread a film of slippery substance coming from the marble as though freshly washed only more slippery; that on a number of occasions he himself had slipped and fallen on the steps because of such sweating; that he had told the owner, Mr. Perry, and the rental agent about it many times; that they always said it would be taken care of, but it never was. The court ruled that the affidavit was admissible for the purpose of impeaching the testimony of the witness Randall, and admitted it in evidence for that purpose, but refused to admit it in evidence as affirmative proof to be considered on the question of negligence.

No other testimony was offered in the case except that of a medical witness who testified concerning the extent of the plaintiff's injuries.

At the close of all the evidence offered by plaintiff the court directed a verdict for the defendant in each case, upon the ground that the evidence failed to sustain the charge made in the declaration.

The record discloses three assignments of error: First, the court's order directing the jury to return a verdict in favor of the defendant; second, the order refusing to allow the allegations contained in the affidavit of

the witness Randall to be accepted in evidence as affirmative proof of the facts therein stated; and, third, "in not holding that the inferences arising from the evidence showed a suppression of testimony and raised a presumption as a matter of law that the defendant had no defense."

In our opinion the record does not disclose error in any rulings of the trial court.

 It is elementary that one who seeks to recover of another on the ground of negligence on the part of the other assumes the burden of maintaining, not only the negligence complained of, but that such negligence has occasioned him loss. 20 R. C. L. 194. In this case accordingly the burden of proof was upon the plaintiff to sustain the charge of negligence made in the declaration. But the testimony introduced by plaintiff for that purpose is so vague, incomplete, and unsatisfactory that it fails to establish that the defendant was guilty of negligence, and·that the plaintiff's injuries resulted from such negligence. It is not shown by the testimony that it is negligence per se to make use of Tennessee marble as a material for the construction of such steps as those in question in this case. Nor does the testimony explain the cause of the plaintiff's fall upon the steps, whether it resulted from a misstep, or tripping, or by reason of her own lack of attention and care in descending the steps. The testimony does not tend to sustain the charge that the steps themselves were in a dangerous condition from moisture or otherwise. Neither the plaintiff nor her sister testified to any such condition, and the affidavit of the witness Randall is not competent proof of the charge. The court was right in directing a verdict for the defendant. "Before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867; Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780·; Coughran v. Bigelow, 164 U. S. 301, 17 S. Ct. 117, 41 L. Ed. 442. It is apparent that in this case a verdict for damages against the defendant could have been founded only upon conjecture by the jury and not upon actual proof.

██ Nor can we sustain the second assignment of error presented by the appellant. The court was plainly right in refusing to admit the affidavit of Randall as affirmative proof of the facts therein stated. The only ground upon which the affidavit could be lawfully admitted was for the purpose of affecting the weight to be given to the testimony of Randall as a witness, and such was the ruling of the trial justice. It has been rightly stated that: "Where a witness has been impeached by the party calling him by proof of contradictory statements made by him the effect thereof is only to detract from the weight to be given his testimony. The statements so proved are not to be considered as evidence of the facts stated." 28 R. ·C. L. 645.

The third assignment of error is not supported by the record. There is no proof showing "a suppression of testimony" by the defendant, and consequently there is no presumption raised to the effect that the defendant had no defense.

The judgment of the lower court in each case is affirmed, with costs.