HOGUE v. SIMONSON et al.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1904.)

1. AGENTS—AUTHORITY—EXTENT.
     An agent whose only authority was to purchase and pay for potatoes, and ship them to his principal, cannot bind his principal by a contract for the sale of potatoes.

2. SAME—RATIFICATION—ESSENTIALS.
     In order to constitute a ratification by a principal of unauthorized acts of an agent, the principal must have full knowledge of the original transaction, and, with such knowledge, must either agree to accept the fruits thereof, or by some act estop himself from asserting the invalidity of the original acts.

3. SAME—EVIDENCE—SUFFICIENCY.
     The fact that after the unauthorized act of an agent, employed to buy potatoes, in selling potatoes to plaintiff, plaintiff told the principals that he had bought the potatoes, and that they had not turned out as represented, and that the principals inquired how the sale was made, and, on receiving a partial explanation, stated that if everything was all right they would settle, and the fact that the principals received the balance of the agent's account—the check received by the agent from plaintiff having been deposited on that account—were insufficient to show a ratification of the agent's unauthorized act in selling and warranting the potatoes.

4. SALES—WARRANTY—BREACH—WAIVER.
     There can be no recovery after a breach of warranty as to the quality of potatoes sold, where the buyer, at the time he received them, knew that they were not of the quality agreed upon, and then accepted them under a new agreement to pay a less price.
     Williams, J., dissenting.

Appeal from Trial Term, Steuben County.

Action by Patrick J. Hogue against Morris W. Simonson and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

M. A. Leary, for appellants.
Monroe Wheeler, for respondent.

STOVER, J. This action was brought to recover for a breach of warranty upon the sale of a quantity of potatoes; the warranty being that "the same were fancy and uniform round stock and, with few exceptions, free from small, very large or long potatoes, and not grub eaten, and of first-class quality and condition." Upon the trial the sale was sought to be established through one Smith, as the agent of the defendants. The evidence shows that Smith was the agent of the defendants, authorized only to purchase potatoes from the farmers in the vicinity of his residence (Addison, N. Y.), and to ship the same to the defendants at Newark, N. J. The defendants furnished Smith with $500, which sum Smith deposited in a bank at Addison to the account of the defendants; Smith making sight drafts, with bill of lading, when a car was shipped, and having a power of attorney to check against the deposit to buy goods for

defendants. The plaintiff testified that he first saw one Wheeler, and had a conversation with him with reference to purchasing potatoes, and agreed at that time to give him 40 cents per bushel for a car load of potatoes such as were shown—being smooth, round, and good-size potatoes—and then paid Wheeler ten dollars on account. It does not appear that Wheeler had any authority from the defendants, or that he was in any way connected with them; the statement being made somewhere in the evidence that he had some relations with Smith. Subsequent to the conversation with Wheeler, the plaintiff saw Smith, and Smith informed him that they could not load the potatoes at the point first suggested, but could get them at another; that he then saw the sample potatoes that Wheeler had agreed to give; and that Smith had agreed to ship the car load from Canisteo. When the potatoes arrived from Canisteo, they were examined by the plaintiff and Smith, and the plaintiff found fault, and said that the potatoes were of inferior quality, and then told Smith they were not the potatoes he had bought; that he did not want them, and could not use them. Smith then said he was a little disappointed himself. Plaintiff then suggested, "Can't you send them down to your people, Simonson & Co." (the defendants), and Smith said, "No; they are full down there." After some further discussion, in which it is stated that Smith said that the potatoes were better in the bottom of the car than they were on top, the plaintiff agreed to take the potatoes at $38\frac{1}{2}$ cents per bushel; Smith saying, "They are on my hands here." Subsequently the plaintiff went to the defendants' place of business, and saw the defendant Horton, and told him that he had bought a load of potatoes from Smith that did not turn out as he represented them. Horton expressed some disappointment, saying that they had had trouble with Smith, and he was sorry they had not known before about the transaction; that he would like to investigate, and, if it was all right, he would settle. The evidence fairly shows that, up to the time that the plaintiff called upon Horton, the defendants had no knowledge of the transaction, either directly or indirectly, and that at that time Horton requested the plaintiff to send him whatever papers he had; stating that, if everything was all right, they would settle. There was subsequent correspondence, and, a year after, this action was commenced; the defendants not having settled, and having refused to settle, the demand. The check received by Smith from the plaintiff was deposited in the account of the defendants, but of this they had no knowledge until after their attention had been called to it by the plaintiff, and it does not appear where the money came from that purchased the potatoes; Smith having charge of the account, depositing and drawing against it. Smith died before the trial of this action. Wheeler was not produced as a witness.

It is quite clear from the evidence that, so far as the right of the plaintiff to recover is based upon the original authority of Smith to act for the defendants, it must fail, as it is practically undisputed that the only authority he had was to purchase and pay for potatoes, and ship them to the defendants. But the plaintiff seeks to make a case by showing a subsequent ratification of the agreement with

Smith by the defendants. We think he has failed in this. In order to have ratified the act of Smith, the defendants must have had full knowledge of the original transaction, and, with such knowledge, have either agreed to accept the fruits of the agreement, or by some act have estopped themselves from asserting the invalidity of the original act. The rule was originally laid down in Seymour v. Wyckoff, 10 N. Y. 213, namely:

"That the ratification of an act by an agent previously unauthorized must, in order to bind the principal, be with full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded in mistake or fraud."

This rule has been followed in many cases. In Trustees v. Bowman, 136 N. Y. 526, 32 N. E. 988, this language is used:

"But before a principal can be held to have ratified the unauthorized act of an assumed agent, he must have full knowledge of the facts, so that it can be said that he intended to ratify the act. If his knowledge is partial or imperfect, he will not be held to have ratified the unauthorized act, and the proof of adequate knowledge of the facts should be reasonably clear and certain."

We cannot find in the evidence in this case such reasonable and certain evidence either that the defendants knew of the transaction as it originally stood, or that they by any act led the plaintiff to believe that they assented to, or considered themselves bound by, the unauthorized act of Smith. The statement of the plaintiff was that he stated he had bought a car load of potatoes of Smith, and that they had not turned out as he had represented. The defendants, knowing that Smith was their agent for certain purposes, inquired how the sale was made; and, instead of telling the whole transaction, the plaintiff said that the bill of sale was made upon one of their bill heads. It is quite likely that the defendants may at that time have thought that they had been compromised by Smith in some way, but, whatever their reflections may have been, their statement was that they would investigate, and, if they found that everything was all right, they would settle. Upon investigation they were not satisfied that it was all right, they did not settle, and this suit was brought.

The only other act relied upon by the plaintiff is that defendants received the balance of the account deposited in the bank at Addison. But this was undoubtedly their account, and they were entitled to whatever balance there was. If Smith had used their money in speculating on his own account, and had paid for a load of potatoes with their money, and then replaced such portion as he had taken, by a sale of the potatoes, all without the knowledge of the defendants, certainly no ratification of that act could be claimed because the defendants received some time afterwards the balance of the account, which concededly was theirs. Smith, for all that appears in the case, may have used their money to pay for the potatoes, and replaced it when the sale was consummated. There is no evidence tending to show in any way that the defendants had any knowledge of the deposit, or that they received the avails.

So far as the original warranty sued upon is concerned, the evidence does not justify a finding of a breach of that warranty, as the

evidence shows that, at the time the potatoes were received, the plaintiff himself knew that they were not of the quality agreed upon, and then accepted them, making a new arrangement as to the price. But as the case seems to have been tried, without objection, upon a warranty different from that set forth in the complaint, we should for that reason not disturb this judgment.

The trial court was asked to charge "that there is no evidence sufficient to base a finding upon that the defendants received any of the avails of this car load of potatoes, but the evidence is undisputed that they did not"; also that there is no evidence in this case sufficient to justify a verdict that Smith had any authority to sell these potatoes to the plaintiff at the time he sold them. Both of these requests were declined, and an exception taken. We think that the evidence was altogether insufficient to establish the agency of subsequent ratification. The motion for a new trial should have been granted.

Judgment and order reversed, and new trial granted, with costs to appellants to abide the event. All concur, except WILLIAMS, J., who dissents.