### NORDEN et al. v. DUKE.

(Supreme Court, Appellate Division, First Department. May 18, 1906.)

1. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—EVIDENCE—SUFFICIENCY.

An employé of one engaged in the business of buying and selling cotton bought and sold cotton through a broker in the name of the employer. When the employer was ill or away from home, it was the custom of the employé to draw checks on the employer's account for incidental expenses connected with the general business, and to honor drafts generally or specifically connected with calls for additional margins on various speculations, and to look after the employer's business generally. He had closed some business matters when the employer was not present. When the employer went away for several months for the benefit of his health, his accounts were transferred to the employé's name, and he carried and managed them. At the time the employé opened the account with the broker, the employer was confined to his house and could not be consulted with respect to business affairs. Prior to the transaction with the broker, the employé had transactions in stocks and cotton in the employer's name in different instances. *Held*, to establish prima facie authority on the part of the employé to deal with the broker in the employer's name, rendering the employer liable for a loss resulting in the transaction.

2. SAME—ACTS OF AGENT—RATIFICATION.

An employé bought and sold cotton through a broker in the name of the employer, who, on hearing what had been done, said it ought not to have been done without consulting him. The employé informed the employer that his act was an error of judgment, and that, if he could from his salary make the loss good, he would do so, to which the employer made no response. *Held*, not to show a ratification by the employer of the employé's transactions with the broker.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Principal and Agent, §§ 637–641.]

3. APPEAL—REVIEW—QUESTIONS NOT RAISED IN COURT BELOW.

Where, in an action by a broker to charge an employer with a loss sustained through the employé's buying and selling cotton on a specula-

tive account in the name of the employer, the issues were whether the employé had authority to use the employer's name, and whether the employer ratified the act of the employé, and the question whether the transaction was a gambling one was not raised in the trial court, the court on appeal will not decide whether the transaction was illegal.

Appeal from Special Term, New York County.

Action by Herman Norden and another against Brodie L. Duke. From a judgment for defendant entered on dismissing the complaint at the close of plaintiff's case, and from an order denying a motion for a new trial, plaintiffs appeal. Judgment and order reversed, and a new trial granted.

See 94 N. Y. Supp. 878, 95 N. Y. Supp. 940.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGH-LIN, CLARKE, and HOUGHTON, JJ.

Edmund L. Mooney, for appellants.
William F. Goldbeck, for respondent.

HOUGHTON, J.   The defendant resided at and was president of a cotton manufacturing company located at Durham, N. C., and was engaged in the further business of buying and selling cotton and various stocks.   One Bramham for some years had been in his employ as secretary, stenographer, and bookkeeper.   In December, 1903, Bramham began the buying and selling of cotton through the plaintiffs, as brokers, in the name of defendant, which he signed to all orders, telegrams, and letters; the plaintiffs supposing the communications were from the defendant himself.   The first transaction resulted in no profit or loss.   The second produced a profit of $400, for which plaintiffs sent a check payable to defendant.   The last transaction was an order to sell 2,000 bales of March cotton, which order was filled and closed on the same day, resulting in a loss including commissions of $4,900. All these orders which were closely connected were executed by the plaintiffs without demanding margin from the defendant; they knowing him by reputation as a man of means and large dealings.   Subsequent correspondence with respect to adjustment of the loss, in the course of which the $400 check was returned and credited, disclosed the fact that Bramham had used defendant's name and as claimed by defendant without authority.   This action was brought to charge the defendant with the loss sustained. The plaintiffs' theory on the trial was that Bramham had actual authority, or, if not, that the defendant had ratified his acts.   At the close of plaintiffs' proofs the defendant moved to dismiss the complaint, on the ground that neither actual authority nor ratification had been shown. This motion was granted, and from the judgment entered thereon the plaintiffs appeal.

The plaintiffs were compelled to call Bramham as a witness, and, although he appeared quite unwilling to tell all the facts, he did testify that, when the defendant was ill or away from home, it had been his custom to draw checks on defendant's bank account for incidental expenses connected with the general business, and under instruction to honor drafts generally or specifically connected with calls for additional margin upon various speculations, and to look after defendant's affairs

generally; that he had closed some business matters when defendant was not present; that in February, 1903, when defendant visited California for several months, for the benefit of his health, defendant's various accounts (presumably with brokers) were transferred to his (Bramham's) name, and that he carried them and managed them; that the $400 check received from plaintiffs as profit on the second transaction was credited on defendant's books, and the memorandum kept therewith placed on defendant's files, relating to speculative accounts; that defendant was sick at the time he opened the account with plaintiffs, and was confined to his house and could not be seen or consulted with respect to business affairs which continued until the dealings with plaintiffs were closed; that he gave the order to sell the 2,000 bales of March cotton to meet an "emergency" which had arisen "at the office"; and that prior to the transaction in controversy he had had transactions in stocks and cotton in defendant's name in many different instances. While the trial court refused to permit the plaintiffs to show what the defendant said concerning these many transactions carried on in his name, it is fair to assume he did not repudiate them, for he kept Bramham continuously in his employ, except that he discharged him for the period of one day on account of the transaction in controversy.

We think the facts thus proven by the plaintiffs established prima facie authority on the part of Bramham to deal with the plaintiffs in defendant's name. We agree with the trial court that the plaintiffs did not establish ratification by defendant of Bramham's transactions with the plaintiffs. What the defendant said and did on the occasion when Bramham told him what he had done, and how it had resulted, can very fairly be taken as indicating that Bramham in fact had authority to do precisely what he did. Instead of repudiating Bramham's acts and declaring that he had no authority to open an account with plaintiffs, and to give the orders with respect to the sales of cotton, defendant simply said it ought not to have been done without consulting him, and that he made enough mistakes himself without anybody helping him to make them, and that Bramham would have to take the matter up and try and effect a settlement with plaintiffs. The defendant was suffering not only from ill health, but from domestic troubles, at this time, and the reply which Bramham made was that he very deeply regretted having brought this misfortune upon the defendant, to add to the misfortunes which he already had, and that it was such an error of judgment on his part that if he could, from his salary of $15 a week, make the loss good he would be glad to do so, to which defendant made no response. From what was thus said and done, as well as from what was not said, it might legitimately be inferred that the defendant recognized that Bramham had authority to do what he did, and simply reprimanded him for doing it so badly and without advice. This, added to the proof of actual authority, made a prima facie case against the defendant, and the plaintiffs' complaint was therefore improperly dismissed.

It is urged that, even though Bramham had authority, the defendant is not liable, because the transaction was a mere gambling one, and that the complaint was properly dismissed on that ground. This ground was not urged in the court below, and, while we might have the power, we

do not feel called upon, under the circumstances, to decide on this appeal whether the contract was an illegal one or not.

The judgment and order should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.