### NORDEN et al. v. DUKE.

#### (Supreme Court, Appellate Division, First Department. June .7, 1907.)

**1. PRINCIPAL AND AGENT—RELATION—QUESTION FOR JURY.**

In an action by a broker to charge an employer with a loss sustained through the employé's buying and selling cotton on a speculative account in the name of the employer, *held* that, under the evidence, the question whether the employé was the employer's authorized agent was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, § 721½.]

**2. SAME—SUFFICIENCY OF EVIDENCE.**

In an action by a broker to charge an employer with a loss sustained through the employé buying and selling cotton on a speculative account in the name of the employer, evidence examined, and *held* sufficient to sustain the finding that the employé was the authorized agent of the employer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §. 41.]

**3. SAME—RATIFICATION—ELEMENTS—PREJUDICE.**

Where the unauthorized contract made by an agent in the name of his principal had been fully executed before the principal learned of the transaction, his failure to notify the parties who contracted with his agent that the transaction was unauthorized did not render him liable, upon the theory of ratification, since they had not been prejudiced by his silence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, § 641.]

Appeal from Trial Term, New York County.

Action by Herman Norden and another against Brodie L. Duke. From a judgment for plaintiffs, and an order denying defendant's motion for a new trial, he appeals. Reversed, and new trial granted.

For former opinion, see 99 N. Y. Supp. 30, 113 App. Div. 99.

Argued before INGRAHAM, LAUGHLIN, CLARKE, SCOTT, and LAMBERT, JJ.

William F. Goldbeck, for appellant.

Edmund L. Mooney (Frederick A. Card, on the brief), for respondents.

LAUGHLIN, J. The plaintiffs were copartners, conducting business as stockbrokers in the city of New York under the firm name of A. Norden & Co., and the defendant was a resident of the city of Durham, N. C. The action is brought to recover an alleged balance of account claimed to be owing to the plaintiffs by the defendant as the result of certain stock transactions which they claim to have conducted for him. The defendant had an office in Durham, and employed one William G. Bramham, who acted as his private

secretary, stenographer, bookkeeper, and clerk. The principal business of the defendant was looking after his own real estate interests; but he was president of the Commonwealth Manufacturing Company of Durham, and was accustomed to speculate in cotton and stock at Durham and on the New York exchanges. From late in November, 1903, until early in January thereafter, the defendant was confined to his house by illness and Bramham was in charge of his office and business. About the middle of December, 1903, the Morehead Banking Company, of Durham, to which defendant was indebted on a call loan of $16,000, secured by collateral, called the loan and gave notice that, if it was not paid, the collateral would be sold. Bramham endeavored to raise funds to meet the loan; but, being unsuccessful and being unable to communicate with the defendant, determined to speculate in cotton in defendant's name, in the hope of raising the necessary funds to meet the loan. The plaintiffs knew of the defendant through the Commonwealth Manufacturing Company, with which they had business relations, not, however, conducted by defendant, who was its president; but they had never had any business relations with him individually. The latter part of September, 1903, the plaintiffs, of their own motion, communicated to the defendant information concerning some features of the stock market and solicited business. On the 17th day of December, 1903, Bramham wired plaintiffs in defendant's name as follows:

"If you deem advisable, sell 1,000 Jany. and 1,000 March for quick turn 20 points profit."

The following morning, before acting on this telegram, plaintiffs received a further telegram, likewise sent by Bramham in the name of the defendant, to "sell two thousand March at thirteen cents for twenty points profit." Plaintiffs assumed that the telegrams were genuine and authorized by the defendant. They executed the second order the day they received it, and pursuant to a further message, sent by Bramham in the name of the defendant, they closed the transaction without profit or loss, and mailed a statement thereof, addressed to defendant at Durham, N. C. On the 21st day of the same month, Bramham wired plaintiffs, in defendant's name, to "sell 2000 March 1305 cancel previous orders." They executed the order and closed the transaction on the same day, with a profit of $400, and likewise mailed a statement thereof to the defendant, inclosing their check for $400, payable to his order. The next day Bramham wired plaintiffs, in defendant's name, to "sell two thousand March ninety-six." Plaintiffs, through a broker on the floor of the exchange, executed this order, and immediately thereafter the price of cotton rose rapidly, and when the rise in price indicated a loss of about $2,000, plaintiffs wired the defendant to remit $2,000 to protect his margin. The message was received and opened by Bramham, who replied in defendant's name:

"What do you think of position? Don't care to protect March."

The plaintiffs regarded this telegram as ambiguous, but did not understand that it was an order to close the transaction. They wired defendant as follows:

"Bulls buying wildly confident as ever, no faith in it ourselves."

The market continued to rise, and, when a loss of about $4,000 was indicated, plaintiffs wired defendant to "please make remittance four thousand instead of two, answer." Bramham received and opened the message and answered it in defendant's name as follows: "You were advised did not desire to protect trade." Plaintiffs then wired defendant:

"Your telegram read: 'What do you think of position? Don't care to protect March.' You certainly could not expect us to understand this as an order to close your contracts. We must insist on your responsibility for whole amount."

To this Bramham replied, in defendant's name:

"Have no desire to act other than fair, but you had order not to protect March, and consider responsibility for only 20 points. You were notified at one o'clock not to protect."

Having received no remittance, plaintiffs closed out the transaction on the same day at a loss of $4,900 on that speculation, and transmitted a statement to the defendant. After receiving it, Bramham wrote plaintiffs, inclosing the check for $400 which they had previously transmitted, and acknowledging liability to the extent of the loss up to 20 points, but repudiated liability beyond that. The plaintiffs credited the $400 on the account, and brought this action on the 18th day of April thereafter to recover the balance of $4,500.

The undisputed evidence shows that the defendant did not expressly authorize these transactions, and had no actual knowledge thereof until at least six days after the loss had been sustained. The order to buy was given by Bramham, without consulting defendant or communicating with him, directly or indirectly, and the subsequent transactions and negotiations were continued in the same manner. Upon a former appeal from a judgment nonsuiting the plaintiffs, it was held by this court that they established a prima facie case of authority on the part of Bramham to act for the defendant in these matters, and a new trial was granted. 113 App. Div. 99, 99 N. Y. Supp. 30. Upon the last trial the plaintiffs presented practically the same evidence tending to show that the defendant authorized the transactions by general authority conferred upon Bramham. The defendant testified in his own behalf, and Bramham was examined in his behalf by commission. Their evidence does not, as matter of law, at least overcome the prima facie case presented by plaintiffs; and the question as to whether the defendant was liable, upon the ground that Bramham was his authorized agent, was a question of fact which has been determined by the jury in favor of the plaintiffs. We do not regard their verdict on that question as against the weight of evidence, but we are of opinion that there must be a new trial for errors in the charge.

The learned trial justice, instead of submitting the case to the jury upon the question of the authority of Bramham to represent the defendant, instructed the jury, in effect, that even though Bramham was not authorized to represent the defendant, still if the defendant ratified his acts, the plaintiffs were entitled to recover, and he left it to the jury as a question of fact to determine whether or not the de-

fendant did ratify the acts of Bramham with respect to this specula-
tion. Counsel for the defendant duly excepted to the charge as made
with respect to ratification, and requested the court to instruct the
jury that there was no evidence of ratification, and excepted to the re-
fusal of the court to so charge. In these circumstances, it may be that
the jury found that Bramham was not authorized to represent the de-
fendant, but that the defendant was liable upon the theory of ratifica-
tion of his employé's unauthorized acts. We are of opinion that the
evidence did not warrant the court in submitting the question of rati-
fication to the jury. The transactions were entered in the books of
the defendant; and although it appears that he did not come to the
office for a considerable period thereafter, and did not examine the
books or files when he came, yet he is doubtless chargeable in law with
knowledge of the contents of his books and files, after his attention
was drawn to these transactions, on or after the 28th day of December,
1903, by Bramham. He. however, received no benefit from the trans-
actions, and the plaintiffs have in no manner been prejudiced by his
failure to repudiate the same.

As already observed, the loss occurred long before the defendant
had any personal knowledge of the transactions. The defendant,
upon learning from Bramham that the latter had opened this specu-
lative account, disavowed Bramham's authority, and Bramham as-
sumed the responsibility and manifested a willingness and intent to
bear the loss personally. The defendant had no communication or
correspondence with the plaintiffs concerning the transactions. The
plaintiffs communicated with him, but the letter and telegram were
intercepted by Bramham, who conducted the correspondence in the
name of the defendant, and continued the correspondence with plain-
tiffs concerning the adjustment of the account for some little time
after he informed the defendant concerning it. This correspondence
was conducted partly in his own name, and partly in the name of the
defendant, but without the knowledge of the defendant or his authority.
The plaintiffs were informed by letters from Bramham on the 19th
and 23d of January, 1904, that he had conducted this stock speculation
without the knowledge of the defendant. Down to that time plain-
tiffs supposed that they were dealing directly with the defendant. The
defendant, at most, remained silent after discovering that his agent
had assumed to speculate on his account without authority; but, as-
suming that the agent acted without authority, for the jury may have
so found, the defendant was informed of the fact that the loss had
already been incurred, and it does not appear that the plaintiffs have
been prejudiced by his silence. The unauthorized contract had been
made and fully executed. Nothing remained but a liability for a
balance of account. If the plaintiffs had been prejudiced by the failure
of the defendant to notify them that the transactions were unauthorized,
then doubtless he would be liable, upon the theory that it was his duty
to speak; but liability upon the theory of ratification is based upon
principles of estoppel, or the intention of the principal to adopt the
unauthorized act or contract, and there must be, with full knowledge
of the material facts, failure to act, by which the party dealing with
the agent has been prejudiced, before there can be any estoppel, which

precludes the principal from denying the authority of the agent .or facts or circumstances warranting the inference that he intended to adopt the act or contract. Merritt v. Bissell, 153 N. Y. 396, 401, 50 N. E. 280; Minshall v. Arthur, 2 Hun, 662; Hopkins v. Clark, 7 App. Div. 207–213, 40 N. Y. Supp. 130, affirmed 158 N. Y. 299, 53 N. E. 27; Hogue v. Simonson, 94 App. Div. 139, 87 N. Y. Supp. 1065.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

