RAMSAY v. MILLER et al.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

1. NOVATION (§ 5*)—SUBSTITUTION OF NEW DEBTOR.

Plaintiff opened an account with a brokers' branch office, deposited a sum of money, and ordered a purchase of stock. The manager transmitted the money as received to the main office, but did not transmit plaintiff's orders for stock, but transmitted in plaintiff's name a number of orders to buy and sell various stocks, which were excuted by the brokers who believed them to be plaintiff's orders, and entered them on their account. Plaintiff, in ignorance of these transactions, subsequently ordered a sale of the stock he had ordered, and the manager then confessed to plaintiff that he had misappropriated the money, and stated that, if plaintiff would be quiet and not do anything about it, he would readjust the matter, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pay plaintiff his money, whereupon plaintiff replied: "Very well, * * * I have no disposition to be hard upon you. If you have made a mistake, and if you have done a wrong thing, I am the last man when you are down to kick you further." It did not appear that plaintiff at this time knew the state of his account on the brokers' books. In accordance with his promise to the manager, he kept silent for about three months, when he wrote to the brokers for a copy of his account, and upon its receipt at once disavowed it. *Held,* that the conversation between plaintiff and the manager did not amount to a novation.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 5; Dec. Dig. § 5.*]

2. ELECTION OF REMEDIES (§ 7*)—ACTS CONSTITUTING.

There was no election of remedies, for plaintiff never attempted to pursue the manager's promise to readjust the matter.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 12; Dec. Dig. § 7.*]

3. PRINCIPAL AND AGENT (§ 163*)—RATIFICATION OF UNAUTHORIZED ACT OF AGENT.

The manager being the general agent of the brokers, and in no sense an agent of plaintiff, his breach of trust was a breach of duty owed to the brokers, and there could be no ratification of his acts by plaintiff as those of his agent.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 618; Dec. Dig. § 163.*]

4. PRINCIPAL AND AGENT (§ 166*)—RATIFICATION OF UNAUTHORIZED ACT OF AGENT—KNOWLEDGE OF ACTS BY PRINCIPAL.

There can be no ratification of an agent's acts where the principal is ignorant of the whole extent and nature thereof.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 627; Dec. Dig. § 166.*]

Ingraham and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Arthur T. Ramsay against Abraham P. Miller and others. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Benjamin N. Cardozo, for appellants.
W. W. Mumford, for respondent.

SCOTT, J. Appeal from a judgment for plaintiff entered upon a verdict directed by the court.

The plaintiff was a resident of Washington, D. C. Defendants, a firm of stockbrokers, maintained a branch office in Washington, of which one Ludwig was general manager. On January 28, 1907, plaintiff opened an account with defendants by depositing $1,000 with Ludwig and ordering the purchase of 100 shares of the common stock of the steel corporation. He received a notice from defendants' main office in New York, advising him of the purchase of the stock. From time to time plaintiff paid other sums into the branch office, and ordered further purchases of steel stock, until he had finally paid in all about $6,000. Ludwig transmitted this money, as it was received, to defendants. He did not, however, transmit plaintiff's orders as to

the purchase of stock, but, on the contrary, transmitted in plaintiff's name a great number of orders to buy and sell various stocks, all of which were. executed by defendants, who believed them to be plaintiff's orders, and entered them on his account. Plaintiff was in ignorance of these transactions, and in July, 1907, ordered the sale of all of the steel stock which he supposed he had bought. Ludwig then confessed to plaintiff that he had misappropriated his money. Ludwig said, "If you will just be quiet and will not do anything about it, I will readjust this matter, and pay you your money"—to which plaintiff replied: "Very well, Mr. Ludwig, I have no disposition to be hard on you. If you have made a mistake, and if you have done a wrong thing, I am the last man when you are down to kick you further." It does not appear that plaintiff at this time knew the state of his account on defendants' books. He had received no statement except the first one showing the purchase of 100 shares of steel. In accordance with his promise to Ludwig plaintiff kept silence until early in November, 1907, when he wrote to defendants asking for a copy of his account, and, when it was received, he at once disavowed it.

Upon this state of facts we think that the court below was right in directing a verdict for the plaintiff. The situation of the parties, when plaintiff and Ludwig had the conversation above mentioned, was that defendants owed plaintiff the amount of money he had paid, and Ludwig in turn owed defendants the same sum. The conversation between plaintiff and Ludwig did not amount to a novation, because it indicated no intention or disposition on plaintiff's part to release his claim against defendants, and accept Ludwig as his debtor in defendants' place. All he did was to agree to keep silence for an unspecified time in order to enable Ludwig, if he could, to satisfy the defendants' debt to plaintiff. All that plaintiff did, or agreed to do, was to keep silence. Mere silence, no prejudice resulting therefrom to the defendants, does not estop plaintiff from recovering from defendants. Norden v. Dule, 120 App. Div. 1, 104 N. Y. Supp. 854. There was no election of remedies, for plaintiff never attempted to pursue Ludwig's promise to readjust the matter.

The defendants rely chiefly upon what they claim to have been a ratification of Ludwig's acts by plaintiff's silence. The doctrine of ratification is usually applied as between principal and agent when the principal through some form of acquiescence is held to have ratified and adopted his agent's unauthorized acts, and the many cases cited by defendants are in the main of this character. There are difficulties, however, in the way of applying that doctrine to the present case. In the first place, Ludwig was the general agent of the defendants, and in no sense an agent of plaintiff. His breach of trust was a breach of the duty which he owed to defendants. It would be inaccurate therefore to speak of plaintiff as ratifying the acts of defendants' agent. If anything were to be claimed in that regard, it must be that he adopted them as his own, and of that there is no evidence. But, even if we could consider Ludwig as in any sense the plaintiff's agent and speak of a ratification by plaintiff of Ludwig's acts, it would be impossible to find such ratification in the present case,

because it does not appear that plaintiff knew the whole extent and nature of Ludwig's acts. On the contrary, the evidence is that he did not. "Before a principal can be held to have ratified the unauthorized act of an assumed agent he must have full knowledge of the facts so that it can be said that he intended to ratify the act. If his knowledge is partial or imperfect he will not be held to have ratified the unauthorized act, and the proof of adequate knowledge of the facts should be reasonably clear and certain, particularly in a case like this where, so far as the record discloses, no substantial harm has come to the defendants from the delay or the acts of the principal." Trustees, etc., v. Bowman, 136 N. Y. 521–526, 32 N. E. 987.

The judgment and order appealed from are affirmed, with costs.

McLAUGHLIN and HOUGHTON, JJ., concur.

INGRAHAM, J. (dissenting). This action comes up on an appeal from a judgment entered upon a verdict for the plaintiff directed by the court. The defendants requested the court to submit to the jury the question whether there had been a ratification by the plaintiff of the acts of one Ludwig through whose fraud the loss occurred. This request was denied, and the defendants excepted.

I think there was a question for the jury as to whether the plaintiff had not ratified the acts of Ludwig which should have been submitted. Ludwig was the defendants' agent in Washington. The plaintiff had opened an account with the defendants through Ludwig, and ordered the purchase of certain stocks, and had deposited with Ludwig certain sums of money as margin. Ludwig then gave the defendants orders for the purchase and sale of stocks on this account not authorized by the plaintiff, and failed to give orders for the purchase of stocks which the plaintiff had directed him to give. The result of Ludwig's transactions was that the money that the plaintiff had given to Ludwig as margin to be deposited as such had been lost, and this action is brought to recover the amount so deposited. According to the plaintiff's testimony, he went repeatedly to Ludwig, and asked for a statement of his account. No such statement was furnished; Ludwig making excuses for his failure to furnish them. The matter was thus extended from January, 1907, when the account was opened until about the 1st of July, when the plaintiff said to Ludwig that he must have his account closed, and finally, on or about the 1st of July, 1907, he ordered all of his stocks sold. On the morning of the 8th of July he received a telephone message from Ludwig's wife, stating that Ludwig was home sick, and the plaintiff went to see him. Ludwig then told the plaintiff that his money was all gone, that Ludwig had not given the defendants' orders for the purchase of the stock that the plaintiff had ordered, and said to the plaintiff, "If you will just be quiet and will not do anything about it, I will readjust this matter and pay you your money." Ludwig's wife said to the plaintiff: "Mr. Ramsay, this house belongs to me, and you know that it is worth $4,000 or $5,000, and I will deed it to you to pay back the money that has been wrongfully used of yours." She also said that her brother had money and she would send for him, and they would adjust this matter. Finally, the plaintiff

told Ludwig that he would wait for an adjustment to be made. On cross-examination he testified that Ludwig and his wife stated to him that, if he would be quiet and would not do anything about it, Ludwig would adjust the matter, and save the plaintiff his money, and that the plaintiff told Ludwig that he would keep quiet if he would readjust the matter, as he promised he would. Ludwig subsequently gave to the plaintiff as security a policy of life insurance, and also some shares of mining stock. These were subsequently returned to Ludwig in the winter of 1907, or in the early part of 1908. After this conversation, the plaintiff did not tell the defendants anything about the transaction, as he had promised not to do it. On November 8, 1907, he first communicated with the defendant about the wrong that Ludwig had done, and this action seems to have been commenced on February 5, 1908. This is the plaintiff's statement of the transaction, and I think there was sufficient to justify a finding that the plaintiff for a valuable consideration, which consisted of the promise of Ludwig and his wife to adjust the matter so that the plaintiff would receive his money by a conveyance of the house belonging to Ludwig's wife, and receiving the securities which Ludwig delivered to the plaintiff, had ratified the acts of Ludwig in assuming to make the purchases of the stocks on the plaintiff's account which he had not authorized, and agreeing to look to Ludwig for an adjustment of his claim against the defendant. It was certainly capable of the construction that the plaintiff, knowing all the facts, agreed for a valuable consideration to accept Ludwig as his debtor and to discharge the defendants from responsibility for Ludwig's wrongful acts. While it is quite clear that Ludwig was the agent of the defendant, and that at the time this conversation took place the defendant was liable to the plaintiff for Ludwig's acts, the plaintiff could adopt Ludwig's acts in relation to the transaction between himself and the defendants and agree to substitute Ludwig as his debtor instead of the defendants; and, if this was based upon a valuable consideration, I can see no reason why the plaintiff should not be bound. There is no question of estoppel, as it does not appear that the defendant was injured in any way by the delay; but, as I view it, the case rests entirely upon a ratification. Ludwig, as agent of the defendants, had accepted the plaintiff's accounts, and had undertook to transmit orders from the plaintiff to the defendants. Ludwig had failed to transmit the orders and had transmitted orders for which the plaintiff was not responsible, and, when the plaintiff ascertained this fact, he accepted Ludwig's obligation to repay him the amount that he had lost. Thus it seems to me that there was a question presented as to whether the plaintiff did not ratify Ludwig's acts in the transaction with the defendants and accepted the promise of Ludwig as a substitution for the obligation of the defendants.

I think this question should have been submitted to the jury, and that the judgment and order should be reversed.

LAUGHLIN, J., concurs.