MOTT v. SCHOLES et al.

(Supreme Court, Appellate Division, Second Department. November 17, 1911.)

1. PRINCIPAL AND AGENT (§ 173*)—ACT OF AGENT—RATIFICATION—SUFFICIENCY.

Evidence *held* insufficient to show that defendant ratified her mother's unauthorized contract to convey land.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 659–661; Dec. Dig. § 173.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PRINCIPAL AND AGENT (§ 166*)—UNAUTHORIZED ACTS—RATIFICATION—REQUISITES.

Intention to ratify, based upon full knowledge of the facts, is essential to the ratification of an unauthorized act.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 627–633; Dec. Dig. § 166.*]

3. PARENT AND CHILD (§ 12*)—PRESUMPTION OF AGENCY.

The mere relationship of parent and child between adults does not warrant presumption of general agency by a mother for her daughter, authorizing a contract to convey the daughter's land.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 100–110; Dec. Dig. § 12.*]

4. PRINCIPAL AND AGENT (§ 170*)—UNAUTHORIZED ACTS—DISAVOWAL—ESTOPPEL.

Defendant's failure to disavow her mother's unauthorized contract to convey defendant's land in her first conversation with the purchaser's assignee did not estop her to make subsequent disavowal; the assignee not having been prejudiced by defendant's silence.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 638–643; Dec. Dig. § 170.*]

Appeal from Special Term, Nassau County.

Action by Oscar H. Mott against Lucy W. Scholes and another. Judgment dismissing the complaint, and plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and RICH, JJ.

M. B. & D. W. Blumenthal, for appellant.
Charles I. Wood, for respondents.

CARR, J. The plaintiff appeals from a judgment of the Special Term in Nassau county, dismissing his complaint for the specific performance of a contract to convey real property. The plaintiff was the assignee of one Zimmermann, who was, in turn, the assignee of one Brundage. The plaintiff declared in the complaint upon a written contract which it alleged was executed by a Mrs. McCormack as the duly authorized agent of the defendant Mrs. Scholes. The answer denied this allegation, and set up a number of affirmative defenses. At the trial no attempt was made to show that Mrs. McCormack had any authority whatever as an agent from her daughter, Mrs. Scholes, who owned the property in her own right. Instead of seeking to establish an agency, the plaintiff sought to prove a subsequent ratification of the contract by Mrs. Scholes. The trial court deemed the proof of ratification insufficient. There was no proof offered by the defense; the case being determined on the plaintiff's proofs alone.

[1] The facts are as follows: Mrs. Scholes owned the property. It had at one time been owned by her father, Mr. McCormack, who is now dead. Her mother, Mrs. McCormack, an old woman, resided with her. The property was near that of Zimmermann. It was in the market for sale at $10,000 or $9,000, subject to a mortgage for $2,000. Zimmermann wanted the property, and he authorized one Brundage, a real estate agent, to buy it for him at $6,000, if he could get it. Brundage was not called as a witness. But it appears that Brundage

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

went to a real estate agent, Oldrin, a woman, and requested her to prepare a contract between him as vendee and Mrs. McCormack as vendor. Some question arose as to the description to be put in the contract, as they did not know it definitely at the time. Brundage suggested a description which Oldrin put in the paper. Then Brundage went away and returned with Mrs. McCormack. She did not have her glasses, and could not read the paper. Oldrin read it to her. As the paper then stood, it recited that Mrs. McCormack was the "seller," and the name of Mrs. Scholes appeared in no way thereon. Brundage asked Mrs. McCormack to sign it. She then signed her own name at the foot thereof. Thereupon Brundage asked her to sign also in the name of her daughter, Mrs. Scholes. Mrs. McCormack said that she did not know it was necessary. Brundage said it was. Then she signed her daughter's name, so that the signatures to the paper read as follows: "E. J. McCormack or Lucy W. Scholes." The sum of $100 was paid on account by Brundage, and the expressed consideration was $6,000, $5,900 to be paid "in cash on the delivery of the deed as hereinafter provided." Thereafter, but practically on the same occasion, Brundage asked Oldrin to insert the name of Mrs. Scholes in one of the duplicate "contracts." She inserted the name of Mrs. Scholes, so that the contract read:

"Agreement made and dated April 29th, 1910, between Eliza J. McCormack, Lucy Wilson Scholes of Sea Cliff, * * * hereinafter described as the seller," etc.

Nowhere in the paper is there any recital that Mrs. McCormack was purporting to act as an agent for anybody. She had thought, for some reason, that her own signature was all that was necessary. As before stated, no attempt was made at the trial to prove that she ever claimed to be her daughter's agent or was so in fact. The plaintiff did not call Brundage, who, while pretending to act as a principal, was really the agent of the undisclosed principal, Zimmermann, to whom he immediattly turned over the contract. The attempt to prove a ratification by Mrs. Scholes rested entirely on the testimony of Zimmermann. This testimony, not being contradicted, must be given full effect. Yet, giving it full effect, it does not show any ratification by Mrs. Scholes.

[2] The rule as to ratification is stated quite satisfactorily as follows:

"A ratification of the unauthorized act of an agent or of a stranger who claims to act as such, if it exists, must be found in the intention of the principal, either express or implied. If that intention cannot be shown, no ratification can be held to have been established. While it is the duty of a principal to disavow the unauthorized act of his agent within a reasonable time after it comes to his knowledge, or otherwise, in some cases, he makes the act his own, still, where one who has assumed to act as an agent for another has no authority to do so, but is a mere volunteer, a failure to disavow his acts will not amount to a ratification, unless under such circumstances as indicate an intention to do so." Merritt v. Bissell, 155 N. Y. 396, 50 N. E. 280.

The case at bar does not present the feature of an actual agent attempting to bind a principal by an act beyond the authority of the

agency. If it can be considered that Mrs. McCormack was attempting to act in any manner as an agent, then, under the case as it stood, she was a mere volunteer who had attempted to assume or usurp an agency without authority.

[3] From the mere circumstance that she was the mother of Mrs. Scholes, no presumption of general agency arises. Concededly Mrs. Scholes did not expressly ratify the contract executed by Mrs. McCormack. After Zimmermann took an assignment thereof from Brundage, he went to the property with a prospective tenant, and, meeting Mrs. Scholes, he asked to be shown through the house, and his request was complied with. Mrs. Scholes asked him to return, as she wished to have a private conference with him. He did return in about an hour. According to his testimony, a conversation took place as follows: Mrs. Scholes said:

"Mr. Zimmermann, is it true that Mr. Brundage has bought the cottage for you, and that he had assigned the contract over to you?"

He answered:

"It is."

She then said:

"Mr. Zimmermann, you know $6.000 for this property, considering that mother and I have lived in this for many years, and that we spent some money—can't you pay us a little more? And after paying the mortgage there won't be much left. You are a rich man, and we are poor people. Can't you pay us a few hundred dollars more?"

He answered:

"Why, Mrs. Scholes, haven't you read the contract?"

She said:

"I did."

He then said:

"I bought the contract, and the contract calls for $6,000 for the property, and I don't see any reason why I should pay you any more."

So far, there is nothing to show any ratification by Mrs. Scholes of the contract of Mrs. McCormack. This evidence discloses, on the contrary, an active dissatisfaction on the part of Mrs. Scholes. Zimmermann testifies, further, that at this stage of the talk he started to go, and then said:

"Mrs. Scholes, would it not be convenient for you that we should pass title this month (meaning the month of May), as I have an opportunity now to rent the cottage to Mrs. Mulholland."

She said:

"Mr. Zimmermann, I have read the contract through, and as near as I can remember it was—the title was to be closed about June 29th, 60 days after the purchase."

He said:

"Mrs. Scholes, that is very true, but by that time I won't have an opportunity to rent the cottage to Mrs. Mulholland."

She said:

"Well, now, Mr. Zimmermann, I don't think we can get through any sooner. I have a great deal of furniture to move to the little cottage and the furniture you see is so heavy here and I have to find room for it. I don't think I can get through before the end of June."

With that he left.

[4] Does this latter part of the conversation show a ratification by Mrs. Scholes of the contract made by Mrs. McCormack? The whole conversation must be taken together. It shows dissatisfaction on the part of Mrs. Scholes as to the price and an attempt by her to get more. Zimmermann would not give any more, but he was willing to ask a favor for his own exclusive benefit. The fact that Mrs. Scholes pointed out to him that he was asking more than his contract called for does not mean in itself that she ratified the contract. Nor does the fact that she further pointed out that a compliance with such request would inconvenience her imply a ratification, unless she was under a legal duty to then and there disavow the contract. Under the rule as declared in this state, she was not obliged to then and there disavow the contract. Her silence created no estoppel in pais against her, for Zimmermann's position was not changed to his injury. To be bound by a ratification, the intention to ratify based upon a full knowledge of the facts was necessary. All that Zimmermann's testimony shows is that Mrs. Scholes did not at that time disavow the act of Mrs. McCormack. Ratification is not presumed from such a circumstance alone. She did subsequently refuse to be bound by it, and she was under no obligation, under the circumstances of this case, to act precipitately in arriving at her determination.

The judgment should be affirmed, with costs. All concur.